Richard GEISSLER et al., Appellants,

v.

Peter COUSSOULIS and William Patrick,
d/b/a Southland Cafe, and d/b/a
Western Grill, Appellees.

No. 14626.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 27, 1967.

Sam Houston Clinton, Jr., Austin, for appellants.

Lang, Cross, Ladon, Oppenheimer & Rosenberg, San Antonio, Jerome L. Avedon, Fansler & Fansler, Laredo, for appellees.

PER CURIAM.

This is an appeal from an order of the district court of Webb County temporarily enjoining defendants, Richard Geissler, William Geissler, Jose Vasquez, and an organization known as VIDA, appellants here, as well as all persons acting in concert with them, from engaging in certain conduct in connection with the picketing, incidental to a labor dispute, of the Southland Cafe, a business owned and operated by plaintiffs, Peter Coussoulis and William Patrick, in the City of Laredo. Specifically, the temporary injunction forbids (1) having more than two pickets at any time within 50 feet of any entrance to the cafe or within 50 feet of any other picket; (2) displaying any red or black banner in connection with the picketing; and (3) displaying such red or black banner accompanied by use of "huelga," the Spanish word for "strike."

That portion of the injunction limiting the number of pickets follows the wording of Section 1(1) of Article 5154d, Vernon's Ann.Civ.St.[1] The evidence, while conflicting, warrants the conclusion that, on various occasions, the picketing was carried on in a manner violative of what

---

[1] "Section 1. It shall be unlawful for any person, singly or in concert with others, to engage in picketing or any form of picking activity that shall constitute mass picketing as herein defined.

" 'Mass picketing,' as that term is used herein, shall mean any form of picketing in which:

"1. There are more than two (2) pickets at any time within either fifty (50) feet of any entrance to the premises being picketed, or within fifty (50) feet of any other picket or pickets."

defendants label the "numbers and distance formula" established by the statute.

Defendants first contend that the numbers and distance formula prescribed by the statute is invalid because it is unconstitutionally vague and because it is an unreasonable abridgment of the rights of freedom of expression and peaceable assembly.

■ We cannot agree that the numbers and distance formula must fall because of vagueness. It embodies a precise formula and does not leave it to law enforcement officers to define the conditions under which persons wishing to disseminate the facts of a labor dispute may use the streets and sidewalks. Any person wishing to engage in picketing activities can determine, by reading the statute, exactly what is prohibited.

All parties concede that, at least since the decision in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), picketing is an exercise of that freedom of expression which is protected against state abridgment by the Fourteenth Amendment to the United States Constitution, and that the validity of restraints on picketing must be weighed according to standards applicable in determining the validity of governmental interference with First Amendment freedoms. However, despite the broad and sweeping generalizations found in the Thornhill opinion, subsequent decisions make it clear that picketing may be regulated when its purposes or the manner in which it is conducted run counter to state policy in an area open to state regulation.[2] As Mr. Justice Frankfurter has summarized the situation: "It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance." Hughes v. Superior Court, etc., 339 U.S. 460, 465–466, 70 S.Ct. 718, 721, 94 L.Ed. 985 (1950).[3]

While there has been no decision by the Supreme Court of the United States passing specifically on the power of a state to limit the number of pickets, there is no lack of dicta to the effect that such regulation may be validly imposed. Even in Thornhill, the opinion of Mr. Justice Murphy, speaking for eight members of the Court, stressed, among other things, the fact that the legislation there struck down contained no exception based on the number of pickets. 310 U.S. at p. 99, 60 S.Ct. at p. 742. It is significant that recognition of the power of the states to limit the number of pickets is often

**2.** The post-Thornhill decisions are discussed by Mr. Justice Frankfurter in his opinion in International Brotherhood of Teamsters Union etc. v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957).

**3.** The fact that picketing, although it contains ingredients of communication, cannot be dogmatically equated with the constitutionally protected freedom of expression has been recognized by two members of the present Court who espouse the theory that First Amendment freedoms are "absolutes." Thus, Mr. Justice Douglas, dissenting in Bakery & Pastry Drivers and Helpers Local No. 802 etc. v. Wohl, 315 U.S. 769, 776–777, 62 S.Ct. 816, 819 (1941), observed: "Picketing by an organized group is more than free speech, since it involves patrol of a par-

ticular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence these aspects of picketing make it the subject of restrictive regulation." Mr. Justice Black has, seemingly, gone further, regarding picketing as conduct rather than speech. In his concurring opinion in Cox v. State of Louisiana, 379 U.S. 536, 577, 578, 85 S.Ct. 453, 468, 13 L.Ed.2d 471 (1965), after speaking of the validity of legislation "regulating *conduct*—patrolling and marching —as distinguished from *speech*," Mr. Justice Black observed: "Picketing, though it may be utilized to communicate ideas, is not speech, and therefore is not of itself protected by the First Amendment." (The emphasis is Mr. Justice Black's.)

found in opinions of members of the Court who consistently supported the right to picket as an exercise of freedom of expression.[4]

■ The concession that government may validly limit the number of pickets is no more than a recognition of what is a classic distinction in the theory of freedom of expression. That distinction is the one between a regulation which governs the time, place and manner of expression, and legislation which attempts to limit or control the content of discussion. No one has seriously contended that expression is constitutionally protected against restraints of the nature of what may be called "reasonable parliamentary rules." Under any theory, speech is subject to reasonable regulations in the interest of order.[5]

■ Our statute does not, as did the ordinance condemned in Thornhill, proscribe all picketing at all times and at all places. It may be, as contended by defendants, that the distance and numbers formula, as applied to some situations, would, in fact, render otiose efforts to publicize the facts of a labor dispute by picketing and thus constitute an unreasonable interference with freedom of expression. But this does not require that the statute be relegated to the limbo of unconstitutional legislation. A statute valid as to one state of facts may be invalid as to another. Nashville, C. & St. L. R. Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935).

■ We, therefore, overrule defendants' contention that Section 1(1) of Article

5154d is an unreasonable impairment of the right to disseminate information concerning a labor dispute. We have carefully examined the record before us and find nothing to justify the conclusion that, as applied to the facts of this case, the regulation operates as an unconstitutional abridgment of the right of freedom of expression. The physical facts here are such that two pickets can be stationed at every entrance to the cafe without violating the statute, so that the dissatisfied employees can communicate their message to all persons who attempt to enter the restaurant, be they prospective customers, employees or suppliers.

Defendants take special exception to the legislative imposition of a limitation on the number of pickets, apparently espousing the desirability of a judicial determination, on a case-by-case basis, of what is a reasonable number under the circumstances. We are, of course, not concerned with the wisdom of the legislative decision to formulate a precise, objective standard, but it may be pointed out that the labor movement was less than enthusiastic concerning the results of judicial regulation of labor disputes on a case-by-case basis.[6]

■ What has been said above concerning the validity of a statutory limitation on the number of pickets *vis-a-vis* the constitutional guarantee of freedom of expression is equally applicable to defendants' contention that such restriction is an unconstitutional interference with the right of peaceable assembly. The right to assemble peaceably is "cognate to those of free speech and free press." De Jonge v. State of Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81

---

4. Mr. Justice Reed, dissenting in Milk Wagon Drivers etc. v. Meadowmoor Dairies, 312 U.S. 287, 318–319, 61 S.Ct. 552, 567, 85 L.Ed. 836 (1941), conceded that picketing might validly be limited "to two or three individuals at a time." See also the dissenting opinion of Mr. Justice Douglas in Vogt, supra, n. 2, 354 U.S. at p. 296, 77 S.Ct. at p. 1172.

5. Calvern, the Concept of the Public Forum: Cox v. Louisiana, 1965 Sup.Ct. Rev. 1, 23.

6. Frankfurter & Greene, The Labor Injunction (1930); Sayre, Labor and the Courts, 39 Yale L.J. 682 (1930). The varying results from judicial efforts to impose numerical limitations on picketing are discussed in 1 Teller, Labor Disputes and Collective Bargaining, § 125 (1940).

L.Ed. 278 (1937). Like the right to freedom of expression, the right of assembly "may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order," although it cannot, under the guise of regulation, be denied. Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L. Ed. 1423 (1939). The aspects of picketing which prevent its complete identification with freedom of expression also prevent assembly from being the factual or legal equivalent of expression. If a numerical limitation on picketing is valid, then such a limitation on assemblage for the purpose of picketing must be equally valid.

Insofar as Boyd v. Deena Artware, Inc., Ky., 239. S.W.2d 86 (1951), holds that a limitation on the number of pickets is an abridgment of the right of free assembly, it appears to run counter to accepted doctrine. United Electrical, R. & M. Workers v. Baldwin, 67 F.Supp. 235 (D.C.Conn. 1946); Phelps Dodge Copper Products Corp. v. Electrical, R. & M. Workers of America, 138 N.J.Eq. 3, 46 A.2d 453 (Ch. Ct. 1946, aff'd, Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America, etc., 139 N.J.Eq. 97, 49 A.2d 896).

The ban on the use of the red and black flag is based on the trial court's conclusion that the display of such a banner in the City of Laredo violated the provisions of Secs. 1(2) and 3 of Article 5154d. This conclusion rests on the fact that, prior to the commencement of the strike, 80% of the customers of the Southland Cafe were visitors from the Republic of Mexico, and on testimony relating to the labor laws of Mexico.

The pertinent testimony was given by two members of the Mexican Bar, Messrs. Jose Leopoldo Lara Salinas and Gustavo Garza Guerra. They testified, in effect, that when Mexican workers wish to express their dissatisfaction with their working conditions by calling a strike, they must follow the procedures established by law.

The workers prepare a petition or memorandum stating their grievances and specifying the date on which the strike will begin. This petition is transmitted to the employer through a board of conciliation and arbitration, a governmental agency. The employer has 48 hours within which to answer the petition, and the board then sets a hearing for the purpose of attempting to reconcile the differences between the parties. If the attempt at conciliation fails, then, according to Mr. Guerra, the governmental agency declares that a state of strike exists. After such declaration, work at the employer's place of business is suspended, the business is closed, and it is illegal for any person to enter the strike-bound premises, with the exception of such person as may be designated to enter for the purpose of maintaining machinery.

The workers make known the existence of the strike by displaying a red and black flag, usually attached to the building at or near the entrances, and by picketing. Mexican labor law contains no reference to picketing or to the display of any banner. The red and black banner has been adopted by Mexican labor as the symbol signifying that a strike is in progress. The evidence in this case discloses that the banner displayed by defendants was obtained from the C.T.M. (Confederation of Mexican Workers), a Mexican labor organization.

The trial court found that the display of the banner created an "obstacle to the free ingress and egress of plaintiffs' business in violation of Sec. 1(2) of Article 5154d * * *" because the majority of plaintiffs' customers "would feel that they were violating some law" if they crossed the picket line.

The statutory provision relied on by the court declares that "mass picketing," which is prohibited by the statute, shall include, among other things, any form of picketing in which the pickets "constitute or form any character of obstacle to the ingress to and egress from any entrance to any premises being picketed or to any other premises,

either by obstructing said free ingress or egress by their persons or by the placing of vehicles or other physical obstructions."

 There is no evidence in the record to support the finding that the use of the banner constituted an obstacle to the ingress to and egress from the Southland Cafe. No one who desired to do so was physically prevented from entering the restaurant. Plaintiffs' principal witness testified categorically that no one was physically prevented from entering the restaurant.

Perhaps the trial court felt that the display of the banner constituted a mental or psychological barrier to those desiring to enter the cafe. The simple answer to this is that the statutory provision on which plaintiffs rely clearly relates only to physical obstructions. The statute talks solely in terms of an "obstacle" formed by the person of the picket or by a vehicle or other "physical" obstruction. One of the basic purposes of maintaining a picket line is to deter those who are sympathetic to the strikers' cause from dealing with the employer. If the picket line has the desired effect, there will be created in the minds of potential customers a disinclination to enter the strike-bound premises. If this psychological effect of a picket line is sufficient to brand it illegal as mass picketing, then the result of the statutory language is to prohibit all successful picketing. Such an interpretation would render the statute unconstitutional. As was said in Thornhill: "It may be that effective exercise of the means of advancing public knowledge may persuade some of those reached to refrain from entering into advantageous relations with the business establishment which is the scene of the dispute. * * * But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests." 310 U.S. at p. 104, 60 S.Ct. at p. 745. As the Texas

Supreme Court said in Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, 595 (1948): "Under the decisions of the Supreme Court * * *, picketing does not offend against the statutes merely because third parties who come to the area of the dispute may prove sympathetic to one disputant rather than to the other."

 Sec. 3 of Article 5154d makes picketing unlawful where it "is accompanied by slander, libel, or the public display or publication of oral or written mispresentations." We find nothing in the record to support the trial court's finding that the display of the banner in this case constituted a misrepresentation.

Plaintiffs' position is based on the theory that Mexican visitors seeing the banner in front of the cafe would assume, erroneously, that the law of Texas was the same as the law in Mexico, and that, therefore, they would mistakenly believe that the cafe was closed and that they would be suject to criminal sanctions if they crossed the picket line. Since plaintiffs' cafe was, in fact, open for business, and since, in this country it is not a criminal act to cross a picket line, it is urged that the pickets, by displaying the banner, were misrepresenting facts. But a consideration of the evidence demonstrates that this argument is untenable.

The testimony of the experts on Mexican law clearly establishes the fact that it is the existence of the strike, rather than the means chosen by the strikers to publicize the labor dispute, which has the effect, under Mexican law, of closing the employer's business and making entry into the employer's premises a criminal act. The closing of the business and the prohibition of entry automatically follow as the result of the official declaration by a governmental agency that a state of strike exists. In Mexico, then, the display of a red and black banner, and the establishment of a picket line are merely means by which the existence of the strike is made known to the

public. If a strike is actually in progress, it is illegal, under Mexican law, for the employer to attempt to continue to operate his business irrespective of whether or not a banner is displayed or picketing takes place. Similarly, it is illegal for anyone to attempt to enter the strike-bound premises irrespective of whether or not a banner is displayed or picketing takes place.

The display of the banner in front of the Southland Cafe, then, misrepresented nothing. It merely made known the fact that a strike was in progress. This representation was true. It is immaterial if, as a result of this true representation, a visitor from Mexico would reach an incorrect legal conclusion. The basic assumption which underlies plaintiffs' reasoning is that any action by the pickets which would produce in the minds of Mexican visitors the mistaken belief that the business was closed and that entry thereto was illegal would amount to a misrepresentation and, therefore, come within the interdiction of Sec. 3 of Article 5154d. If we accept this premise, the result would be that, because of the peculiarities of Mexican labor law, and because of the ignorance of the law of this country on the part of Mexican visitors, the strikers in this case would completely lose their right to make known the facts of the labor dispute. Whatever means these workers in Laredo might employ to make known to 80% of plaintiffs' customers the fact of the existence of the strike would, if we accept plaintiffs' theory, lead to the same erroneous conclusions on the part of the visitor. The presence of pickets would, in Laredo as in Mexico, indicate that a strike was in progress and would, if we accept plaintiffs' argument, be a violation of Sec. 3 because it would lead Mexican visitors to assume that plaintiffs' business was closed. The only way that these strikers could avoid misleading Mexican visitors would be for them to make every effort to conceal from the overwhelming majority of plaintiffs' customers

the fact that the employees of the Southland Cafe were on strike.

Plaintiffs' theory would not only result in depriving workers in Laredo of the right to make known the facts of a labor dispute, but it would compel the conclusion that plaintiffs themselves were guilty of misrepresenting the facts in this case. The evidence shows that plaintiffs placed signs on their doors announcing, in Spanish, that the cafe was open for business. Under the Mexican law, the restaurant could not be open for business if a strike was in progress. If we assume that plaintiffs' Mexican customers were convinced that Mexican statutes controlled labor disputes in this country, the display of such signs by plaintiffs constituted a false representation that no strike was in progress.

Even if we are willing to accept the proposition that a foreign tourist's ignorance of Texas law can result in the loss of constitutional rights by Texas workmen, there is no testimony supporting the assumption that plaintiffs' Mexican customers believed that the restaurant was closed or that it would be illegal for them to enter. Plaintiffs, apparently in an effort to show that all Mexicans who came to Laredo believed that Mexican labor statutes are applicable in this country, asked one of their experts what the display of a red and black flag in front of a business establishment in this country would mean to him. He answered: "That there is a conflict between the factory and the production and therefore work is suspended." The meaning of the phrase "conflict between the factory and the production" eludes us, but it is clear that this expert would conclude simply that there was a labor dispute and that "therefore work is suspended." When we consider that this same witness defined a strike "as a temporary legal suspension of work," it is patent that, to him, the presence of a red and black flag in front of the Southland Cafe in Laredo, Texas, would simply

**716**

signify, correctly, that a strike was in progress.

There is no testimony to the effect that any person whatever refused to enter the restaurant because he thought it was closed or because he thought he would be punished if he entered. Plaintiffs' principal witness testified that he saw some persons who started to enter but changed their minds when they saw the banner. Even if we overlook the fact that such statement was merely a conclusion on the part of the witness, it falls far short of indicating that the disinclination to enter was the result of fear of prosecution, or the mistaken belief that the cafe, despite signs on its doors announcing that it was open for business, was closed, or the fact that the potential customer, realizing that a strike was in progress and being sympathetic to the workers' cause, decided to take his business elsewhere. Significantly, at least one of plaintiffs' employees, a Mexican citizen who lived on the Mexican side of the Rio Grande, did not join in the strike and reported for work every day, despite the picketing and the display of the banner. He, at least, did not mistakenly believe that the cafe was closed and apparently did not believe that he would be arrested for crossing the picket line.

 The use of the word "huelga" by the pickets in conjunction with the display of the banner does not justify the injunction. The right to make known the existence of a labor dispute is not limited to use of the English language. Certainly, the attempt at communication is not rendered illegal simply because effective means of communication are used. No one would contend, other than with tongue in cheek, that one of our basic liberties is restricted to the right to communicate in an ineffective manner. The most effective way to communicate the facts of a labor dispute to visitors from Mexico is by use of the Spanish language.

The judgment of the trial court is modified by striking therefrom the portion enjoining use by the pickets of a red or black banner and by striking therefrom the portion prohibiting use of a red or black banner in conjunction with use of the Spanish word "huelga." As so modified, the judgment of the trial court is affirmed. The costs of this appeal are taxed one-half against appellants and one-half against appellees.