**COLONY FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, et al., Defendants.**

**CROSSLAND SAVINGS FSLA, Plaintiff,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, et al., Defendants.**

**Nos. 85–7266–WMB, 85–8290–WMB.**

United States District Court, C.D. California.

Sept. 4, 1986.

Dana N. Levitt, Barton Klugman & Oetting, Los Angeles, Cal., E. Robert Levy, Levy & Lybeck, Union, N.J., for Colony First Federal Sav. & Loan.

Robert Bonner, U.S. Atty., Roger West, Asst. U.S. Atty., Jeffrey Axelrad, U.S. Dept. of Justice Tort Branch, C. Stephen Howard, Tuttle & Taylor, Los Angeles, Cal., Nikki Calvano, James Roethe, Pillsbury, Madison & Sutro, San Francisco, Cal., for Federal Sav. & Loan.

Marc Marmaro, Jeffer, Mangels & Butler, Los Angeles, Cal., for Crossland Sav.

## ORDER GRANTING MOTIONS TO DISMISS

WM. MATTHEW BYRNE, Jr., District Judge.

Plaintiffs, Colony First Federal Savings and Loan Association (Colony) and Cross-land Savings FSLA (Crossland), bring two related actions against the Federal Savings and Loan Insurance Corporation (the FSLIC), the Federal Home Loan Bank Board (the Bank Board), the Federal Home Loan Bank of San Francisco (the Bank of San Francisco) and the United States to recover damages they allegedly sustained when the San Marino Savings and Loan Association (San Marino) was placed into conservatorship and later receivership.[1] Because this Court lacks jurisdiction over the subject matter of these actions, both complaints are dismissed in their entirety.

### I

On November 4, 1982, Colony and San Marino entered into a loan participation sale and trust agreement in which Colony would become a participant with San Marino in an undivided 95% interest in mortgage loans financing two condominium conversion projects. On November 16, 1982, Colony transferred the sum of $9,983,-949.18 to San Marino to acquire this participation interest. Subsequently, Colony reviewed pertinent loan documents and allegedly discovered factual misrepresentations. Colony alleges that pursuant to the agreement, these misrepresentations required San Marino to repurchase Colony's participation interest.

On January 18, 1984, Colony demanded that San Marino repurchase its entire participation interest. On February 3, 1984, the FSLIC was appointed conservator of San Marino (the Conservator) by the Bank Board.[2] The FSLIC as Conservator refused to repurchase Colony's participation

---

1. The FSLIC is sued in its corporate capacity (FSLIC Corporate) and in its capacity as receiver for San Marino (the Receiver). FSLIC Corporate was created to insure the accounts of federal savings and loan associations, federal mutual savings banks and other eligible institutions. 12 U.S.C. § 1726 (1982).

Colony also names as defendants, in their individual and governmental capacities, David Glenn, Peter Stearns, Edwin Gray, Donald Hovde, Mary Grisby, Lawrence Hayes, William Schilling, Shannon Fairbanks, and Francis Pas-sarelli. John Doe, John Jones, and John Smith are named fictitiously.

The Savings and Loan Department of the State of California and its Commissioner, Lawrence Taggart, were also named in the amended complaint. These parties are no longer in the case.

2. San Marino brought suit seeking an order requiring the Bank Board to remove the FSLIC as Conservator. Judge Kelleher found that the Bank of San Francisco did not abuse its discretion in finding that statutory grounds existed for

interest in any of the loans. Thereafter, Colony brought suit against the FSLIC. The parties settled that case with the FSLIC agreeing to recognize Colony's reduced claim of approximately $4 million.

The facts surrounding Crossland's involvement with San Marino are very similar to those outlined above. On November 15, 1982, Crossland entered into a loan participation sale and trust agreement with San Marino in which Crossland would become a participant in an undivided 95% interest in mortgage loans financing two condominium conversion projects. On December 30, 1982, pursuant to the agreement, Crossland transferred the sum of $4,713,984.34 to San Marino.

After San Marino was placed in conservatorship, Crossland allegedly discovered that certain factual representations in the loan documents were false. In addition, the loans to which Crossland's loan participation package related were sold by the trustee. Crossland alleges that pursuant to the loan agreement, both the trustee's sale and the misrepresentations required San Marino to repurchase Crossland's participation interest. Crossland demanded that the FSLIC as Conservator repurchase the interest, and the FSLIC refused. Crossland brought suit against the FSLIC and the Bank Board. This litigation ended in a settlement with the FSLIC agreeing to recognize Crossland's reduced claim of approximately $2 million.

While the FSLIC was acting as Conservator, the Bank of San Francisco made cash advances to San Marino in excess of $624 million. These advances were made at the Conservator's request and were guaranteed by FSLIC Corporate. In addition, they were secured by mortgages and other assets of San Marino. On December 6, 1984, the Bank Board placed San Marino into receivership and appointed the FSLIC as Receiver. On December 12, 1984, FSLIC Corporate paid off all the advances

to San Marino and received an assignment of the Bank of San Francisco's security interest in San Marino's mortgages and other assets.

In December, 1985, Colony and FSLIC Corporate filed claims in the Receiver's administrative claims process. One of FSLIC Corporate's claims is based on the $624 million debt which FSLIC Corporate succeeded to by paying off San Marino's debt to the Bank of San Francisco. FSLIC Corporate also holds a claim in the receivership in the amount of approximately $240 million, as subrogee of various San Marino depositors to whom FSLIC Corporate discharged its insurance obligations. Colony's claims in the receivership consist of a claim for approximately $4 million based on the settlement agreement, and a claim based on the contentions set forth in its amended complaint.

Unlike Colony, Crossland did not file the claims set forth in its complaint in this action, as a claim in the administrative process. Instead, Crossland alleges that it has presented all of its claims to the Bank Board, and they have all been rejected.

The complaint in the Crossland action and the amended complaint in the Colony action set out numerous claims for relief. Although these claims are not identical, the gravaman of both complaints is that the Bank Board should have placed San Marino into receivership in February of 1984, rather than conservatorship, and immediately liquidated the institution. It is alleged that by allowing the FSLIC to act as Conservator for ten months, FSLIC Corporate was able to convert its unsecured interest in San Marino assets to a secured interest. This conversion was accomplished by using the advances from the Bank of San Francisco to replace outgoing deposits. Since FSLIC Corporate was obligated to pay the claims of the depositors upon liquidation, when it assumed liability for the advances made by the Bank of San Francisco, it

the appointment of the FSLIC as Conservator where there were loan underwriting deficiencies, and substantial dissipation in assets placing the association in an unsafe and unsound condition to transact business. *San Marino Savings and Loan v. Federal Home Loan Bank,* 605 F.Supp. 502 (C.D.Cal.1984).

obtained a secured claim, rather than the unsecured claim it would have otherwise received.

Plaintiffs also argue that the defendants have breached a duty to distribute assets rateably by allowing City First Federal Savings and Loan (City First) to obtain payment on similar claims, while denying Crossland and Colony equal treatment.

Finally, plaintiffs take issue with Bank Board Resolution 84–707 which establishes the priorities for creditors. Plaintiffs allege that this priority scheme is at odds with the Bank Board's own regulations, and improperly places the claims of the remaining depositors and the general unsecured creditors on the same level. Since FSLIC Corporate paid the remaining depositors, the Bank Board's distribution schedule favors FSLIC Corporate to the detriment of the unsecured creditors.

The pleadings in these cases therefore reduce to four general claims: (1) that the Bank Board breached a duty to appoint a receiver, rather than a conservator, for San Marino in February, 1982; (2) that the security interest in certain assets of the receivership claimed by FSLIC Corporate is void as a fraudulent conveyance/preference; (3) that the FSLIC, as Conservator, breached a duty to distribute the assets of San Marino rateably; and (4) that the priorities for distribution of the assets of the receivership established by the Bank Board resolution are contrary to the Bank Board's own regulations.

## II

### The Duty to Appoint a Receiver

■ The United States, as sovereign, is immune from suit unless it waives its immunity and consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A court lacks jurisdiction to entertain a suit against the United States unless the action is brought within an act of Congress specifically authorizing the action. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Statutes authorizing suit against the United States are strictly construed. *Hurley v. United States*, 624 F.2d 93, 95 (10th Cir.1980).

■ The sovereign immunity of the United States extends to its agencies. *Gilbert*, at 1460 n. 6. Accordingly, federal agencies are not subject to suit *eo nomine* unless Congress so consents. *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *City of Whittier v. U.S. Dept. of Justice*, 598 F.2d 561 (9th Cir.1979). The Bank Board is a federal agency organized pursuant to the Federal Home Loan Bank Act. 12 U.S.C. §§ 1421–1449 (1982 and Supp. III 1985). The Federal Home Loan Bank Act does not provide consent to suits against the Bank Board. *Fahey v. O'Melveny & Myers*, 200 F.2d 420, 454 (9th Cir.1952). Defendants argue that because Congress has never waived sovereign immunity with respect to the Bank Board, plaintiffs' claim that the Bank Board breached a duty by appointing a conservator in February, 1983, rather than a receiver, is outside the jurisdiction of this Court.

■ The Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461–1468 (1982 and Supp. III 1985), does contain a limited waiver of sovereign immunity for actions brought by the association against the Bank Board, challenging the appointment of a conservator or receiver.[3] As detailed above, such an action under section 1464(d)(6)(A) was brought by San Marino, and Judge Kelleher upheld the Bank Board's decision to appoint a conservator. Plaintiffs do not contend that the present action is brought within section 1464(d)(6)(A). Rather, they contend that

---

3. Section 1464(d)(6)(A) provides in pertinent part:

"In the event of such an appointment [of a conservator or receiver], the association may, within thirty days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located ... for an order requiring the Board to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver."

this section only applies to the savings and loan association and does not limit actions brought by creditors. However, as section 1464(d)(6)(C) makes clear, section 1464(d)(6)(A) is the exclusive means of bringing an action to challenge the appointment of a conservator or receiver. Section 1464(d)(6)(C) provides that:

Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

This unqualified language does not admit of any exceptions for suits by creditors of the association. Instead, the section bans all judicial action challenging the appointment of a conservator or receiver except where a timely action is brought by the association within thirty days. *First Savings & Loan Association v. First Federal Savings & Loan Association of Hawaii,* 547 F.Supp. 988, 995 (D.Hawaii 1982). Accordingly, plaintiffs claim that the Bank Board improperly placed San Marino in conservatorship in February, 1982 is outside the subject matter jurisdiction of this Court.

### The Security Interest Claimed by FSLIC Corporation

■ The claim of FSLIC Corporate to a security interest in certain assets of the receivership, and the claim of Colony that this security interest is void as a fraudulent conveyance/preference, are currently before the FSLIC as Receiver in the administrative claims process. The allowance or disallowance of these claims is properly within the Receiver's authority as provided by 12 C.F.R. § 549.4(b) (1986):

The receiver shall allow any claim seasonably received and proved to its satisfaction. The receiver may wholly or partly disallow any creditor claim or claim for security, preference, or priority not so proved....

Congress intended that the FSLIC's authority would be "subject only to the regulation of the Federal Home Loan Bank Board" when carrying out its receivership responsibilities. S.Rep.No. 1263, 90th Cong., 2d Sess. 10, *reprinted in* 1968 U.S. Code Cong. & Ad. News 2530, 2539. The FSLIC was intended to be able to act quickly in reorganizing or dissolving a failing institution without hindrance by the judiciary. *North Mississippi Sav. & Loan Association v. Hudspeth,* 756 F.2d 1096, 1101 (5th Cir.1985). This intent was manifested in section 1464(d)(6)(C), which prohibits courts from restraining or affecting the exercise of powers by the receiver. Any attempt by this Court to adjudicate the validity of FSLIC Corporate's claim of security would "restrain or affect" the Receiver's powers in violation of section 1464(d)(6)(C).

Nor can plaintiffs evade section 1464(d)(6)(C) by seeking damages against the Bank of San Francisco, the Bank Board or FSLIC Corporate. Any award of such relief by this Court, based on an adjudication of the validity of FSLIC Corporate's security interest would similarly "restrain or affect" the Receiver. In *Hudspeth,* the plaintiff argued that it was not prohibited from bringing an action against a new savings and loan association which had succeeded to many of the assets of the old association now in receivership. The court rejected this argument, finding that "[e]ven if otherwise correct under Mississippi law, any court ruling that ... [the new association] bears a liability not assigned it by the FSLIC would modify the FSLIC's distribution of assets, and would 'restrain or affect' the FSLIC's powers as a receiver in violation of 12 U.S.C. § 1464(d)(6)(C)." *Id.* at 1102.

Plaintiffs must await a determination by the Receiver of the validity of the security interest claimed by FSLIC Corporate. Thereafter, plaintiffs may challenge the Receiver's determination before the Bank Board and, if necessary, seek judicial review under the Administrative Procedures Act, 5 U.S.C. §§ 701–706 (1982 and Supp. III 1985) (APA). *Hudspeth,* at 1103; *First Savings & Loan Association v. First Fed-*

*eral Savings & Loan Association,* 531 F.Supp. 251, 254 (D.Hawaii 1981).

### The Duty to Distribute Assets Rateably, and The Priorities for Distribution of Assets

■ Plaintiffs claim that the FSLIC breached a duty to distribute assets rateably by denying their claims while allowing a similar claim made by City First. As discussed above, all claims concerning the conduct of the FSLIC as Conservator or Receiver must first be presented to the Bank Board and then may be considered by this Court under the APA. *Hudspeth, supra.* Crossland alleges in its complaint that it has presented its claims to the Bank Board, and those claims have been denied. However, there are no claims under the APA currently before the Court and the Court lacks subject matter jurisdiction to proceed.

Plaintiffs' reliance on *First Empire Bank v. Federal Deposit Ins. Corp.,* 572 F.2d 1361 (9th Cir.1978), *Corbin v. Federal Reserve Bank of New York,* 458 F.Supp. 143 (S.D.N.Y.1978), and *In re F & T Contractors, Inc.,* 17 B.R. 966 (Bkrtcy.E.D. Mich.1982), is inapposite. These cases involve challenges to actions taken by the Federal Deposit Insurance Corporation (FDIC), and the governing statutes in that banking scheme contain no provision analogous to section 1464(d)(6)(C).

Plaintiffs' challenge to the schedule of priorities established by the Bank Board's resolution is also outside the jurisdiction of this Court. Review of this claim may be had, if at all, only under the APA.

### The Federal Tort Claims Act

Plaintiffs claim that the United States has waived its immunity with respect to actions under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1982) (FTCA). The FTCA cannot serve as a basis for jurisdiction here, however, inasmuch as this Court may not proceed with any action against the United States which restrains or affects the Receiver, or bypasses the administrative procedures set out in the banking legislation. 12 U.S.C. § 1464(d)(6)(C). Moreover, as discussed below, agencies may not be sued *eo nomine* under the FTCA, and the claims against the United States are excluded by the discretionary functions exception to the FTCA.

■ The FTCA is a limited waiver of sovereign immunity with respect to claims sounding in tort against the United States. With respect to agencies of the United States, the FTCA expressly provides that the authority of a federal agency to sue and be sued in its own name shall not operate to permit suits under the FTCA against such agencies. 28 U.S.C. § 2679(a). Only the United States may be sued under the FTCA. *Blackmar v. Guerre, supra.*

■ The FSLIC and the Bank Board are federal agencies within the meaning of 28 U.S.C. § 1346(b) and are entitled to the protections of the FTCA. *See Federal Savings and Loan Ins. Corp. v. Quinn,* 419 F.2d 1014, 1017 (7th Cir.1969); *see also Safeway Portland E.F.C.U. v. Federal Deposit Ins. Corp.,* 506 F.2d 1213 (9th Cir. 1974). Accordingly, plaintiffs' tort claims against FSLIC Corporate and the Bank Board must also be dismissed for lack of subject matter jurisdiction under the FTCA.[4]

Plaintiffs' tort claims against the United States are barred by the discretionary function exception of the FTCA. Section

---

**4.** This Court does not reach the issue of whether the Bank of San Francisco is a federal agency for purposes of the FTCA. If the Bank of San Francisco were to be considered an agency for purposes of the FTCA, then it too would be entitled to the protections of the FTCA, and plaintiffs' claims would have to be dismissed for lack of subject matter jurisdiction. If, on the other hand, the Bank of San Francisco were not considered such an agency, this Court would still be without jurisdiction to adjudicate the four general claims raised in the complaints, because to do so would "restrain or affect" the Receiver. The plaintiff must await exhaustion of the administrative review process before pursuing its claims against the Bank of San Francisco. *See Hudspeth, supra; First Savings and Loan,* 531 F.Supp. 251, *supra.*

2680(a) of the FTCA excludes claims against federal employees when the acts challenged are based on the performance of a discretionary function, "whether or not the discretion involved be abused."

■ The FTCA was not intended to create liability for errors made by government executives or administrators in the exercise of their policy judgment. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). As interpreted by the Supreme Court, the discretionary exception of the FTCA is a broad one. "Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Id.* at 36, 73 S.Ct. at 968. *See also United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984) ("whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as regulator....").

The Ninth Circuit, in *Begay v. United States*, 768 F.2d 1059 (9th Cir.1985), stated that the application of the discretionary function exception covered more than strictly regulatory actions of agencies. Drawing on *Varig Airlines*, the court emphasized that it is the nature of the conduct which is critical, rather than the status of the actor. Accordingly, the court found that the exception applied when agencies made administrative decisions grounded in social, economic, and political policy considerations. If judicial review would encroach on the type of policy balancing engaged in by agencies, the exception should apply. *Id.* at 1064.

■ The complaints in these actions seek to impose tort liability on the United States based on alleged negligence and conspiracy by the FSLIC and the Bank Board in the conservatorship and receivership of San Marino. The acts complained of—the placing of San Marino in conservatorship, the conveyance of the security by the FSLIC, the failure to distribute assets rateably, and the improper prioritization of claims—all involve acts committed to the discretion of the FSLIC and the Bank Board. Judicial review of these actions, via a tort action against the United States, would encroach on the government's balancing of the social, economic, and political policy concerns involved in the rescue or liquidation of troubled financial institutions. This type of encroachment is prohibited by section 2680(a). *See First Savings and Loan Association*, supra, 531 F.Supp. at 255.

Plaintiffs' claim that certain of the Receiver's actions fall within an exception to the discretionary acts bar, and rely on *Indian Towing v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In *Indian Towing*, the Supreme Court held that where the United States exercised its discretion to operate a lighthouse, and "engendered reliance on the guidance afforded by the light," it was obligated to use due care in the maintenance of the light. *Id.* at 69, 76 S.Ct. at 126. The failure to use due care in the operation of the light, or the failure to warn others when the light was not functioning, made the United States liable under the FTCA for injuries so caused.

*Indian Towing* is distinguishable from the present case. In *Indian Towing*, the Coast Guard was not engaging in the delicate balancing of social, economic, and political policy considerations when it neglected to maintain the lighthouse in working order. Here, by contrast, the FSLIC and the Bank Board are performing the type of administration and regulation which require a weighing of the relevant policy concerns. These acts "are of the nature and quality that Congress intended to shield from tort liability." *Varig Airlines, supra*, 104 S.Ct. at 2765.

### The Individual Defendants

■ The United States, as sovereign, may not be sued unless it consents. *United States v. Shaw*, 309 U.S. 495, 60 S.Ct.

659, 84 L.Ed. 888 (1940). As discussed above, the United States has not consented to a waiver of its sovereign immunity in this case. Colony seeks to avoid the bar of sovereign immunity by suing officers of the federal government in their individual and official capacities. But the bar of sovereign immunity cannot be avoided "merely by naming officers and employees of the United States as defendants." *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir.1982). The claims against the officers in their official capacity are, in reality, claims against the United States, and are therefore barred. *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Gilbert, supra.*

The claims against the officers in their individual capacity cannot be adjudicated without first resolving the four general claims underlying these actions. To determine whether the officers tortiously conspired to obtain the security interest claimed by FSLIC Corporate, for example, would require this Court to determine whether such an interest is void as a fraudulent conveyance/preference. Although a damage award against an officer in his individual capacity, in and of itself, would not *necessarily* "affect or restrain" the Receiver if the award was to be paid by the officer personally, the Court's determination of the underlying legal issue would certainly "affect" and likely "restrain" the Receiver.

The Court is therefore without jurisdiction to proceed with the action against the officers in their individual capacities pending the outcome of the administrative process.

## CONCLUSION

The complaint in the Crossland action, and the amended complaint in the Colony action, allege claims for relief for conspiracy, breach of fiduciary duty, breach of contract, inducing breach of contract, fraud, violation of constitutional rights, fraudulent conveyance, and declaratory relief. Although these claims are numerous, each requires resolution of the four basic issues involving the placement of San Marino in a conservatorship, the receipt by FSLIC Corporate of a security interest, the nonrateable distribution of assets and the prioritization of claims. This Court is without jurisdiction to resolve these four basic issues—to do so would "restrain or affect" the Receiver, and subvert the administrative process established by the federal banking scheme. Review of the claims in this action must be had, if at all, under the APA.

Nor does the FTCA remedy the Court's lack of jurisdiction. The Court is prohibited from proceeding with the action since it would "restrain or affect" the Receiver. Moreover, the acts of the United States were performed by the federal officers acting in their discretion, and the plaintiffs are barred from pursuing these tort claims by the discretionary functions exception to the waiver of immunity under the FTCA.

Finally, the action against the officers acting in their official capacity is barred by sovereign immunity, and the action against the officers in their individual capacity is barred by 12 U.S.C. § 1464(d)(6)(C).

Because this Court concludes for the reasons stated above that it is without subject matter jurisdiction to proceed, it is unnecessary to consider the parties' other jurisdictional, procedural and substantive contentions.

Based on the above, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the complaint in the Crossland action, and the amended complaint in the Colony action are dismissed for lack of jurisdiction.