FEDERAL SAVINGS AND LOAN IN-
SURANCE CORPORATION, as Receiv-
er for San Marino Savings and Loan
Association

v.

QUALITY INNS, INC., et al.

Civ. No. Y–86–1866.

United States District Court,
D. Maryland.

Jan. 7, 1987.

Thomas G. McGarry, and Daniel M. Litt, Washington, D.C., for plaintiff.

David F. Albright, and Harry M. Rifkin, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Federal Savings and Loan Insurance Corporation ("FSLIC"), in its capacity as federally-appointed receiver for San Marino Savings and Loan Association, filed suit to recover receivership assets from Quality Inns, Inc., Quality Hotels and Resorts, Inc., and Quality Inns International, Inc. The complaint set forth claims for breach of contract with San Marino, breach of fiduciary duty to San Marino, and conversion of San Marino's funds. Defendant Quality Hotels and Resorts counterclaimed against FSLIC, alleging unjust enrichment and conversion of assets.

The parties are before this Court on plaintiff's motion pursuant to Rule 12(b)(1), Fed.R.Civ.P., to dismiss defendant's counterclaims for lack of subject matter jurisdiction. FSLIC argues that any claims against it as receiver for a savings and loan association must be pursued through the administrative claims process. It also contends that, as a federal agency, FSLIC enjoys sovereign immunity from suit. This Court agrees that defendants must exhaust administrative remedies before seeking judicial relief for claims against FSLIC. Accordingly, plaintiff's motion to dismiss defendant's counterclaims will be granted.

### I. Factual Background

In July 1983, Quality Hotels and Resorts ("Quality Resorts") agreed to design and manage part of Silver Creek Ski Resort, which was being constructed by American Resort Services, Inc. ("ARS") in Slatyfork, West Virginia. In addition to a fee for its services, Quality Resorts was to be paid cost plus five percent for purchasing furni-

ture and supplies for the resort on behalf of ARS. One month later, all three defendants apparently entered into a further agreement with ARS to manage the ski resort.

On August 2, 1983, ARS secured a $27,-000,000 construction loan from San Marino Savings and Loan Association, a state-chartered association located in California and insured by FSLIC. The loan agreement provided that ARS could request disbursement of the loan for certain specified purposes. San Marino subsequently entered into an agreement with Quality Inns, Quality International and/or Quality Resorts to inspect the progress and quality of construction of the ski resort, and to approve loan disbursement requests made by ARS.

FSLIC alleges that in January 1984, the defendants and ARS agreed that ARS would request, and defendants would approve, a $1,021,480 disbursement from the loan. Defendants purportedly represented to San Marino that at least $719,732 of the requested funds would be held in escrow by defendants and used only to purchase furniture, furnishings and accessories for the resort. In reliance upon defendants' approval of the disbursement request and their representations about the escrow arrangement, San Marino disbursed $1,021,-480 to defendants in late February 1984.

On March 26th, without San Marino's knowledge or consent, defendants allegedly withdrew over $500,000 from the furniture escrow account to pay accrued management fees and other debts they claimed were owed to them by ARS. Defendants subsequently withdrew the remaining funds in the escrow account to compensate themselves. FSLIC claims that defendants' appropriation of the $719,732 held in escrow represents breach of contract, breach of fiduciary duty, and conversion of San Marino's funds.

The Federal Home Loan Bank Board had placed San Marino into conservatorship and appointed FSLIC as conservator on February 3, 1984. The Bank Board subsequently put San Marino in receivership and appointed FSLIC as receiver on December 6, 1984.

FSLIC thereby succeeded to all the rights, titles, powers and privileges of San Marino. 12 U.S.C. § 1729(c)(1)(B)(i)(II); 12 C.F.R. § 569a.4.

FSLIC filed suit against the three defendants on April 17, 1986. Quality Resorts asserts by way of counterclaim that it has never been compensated for operating and capital improvement costs totalling $257,238.74 advanced for Silver Creek Ski Resort during 1983 and 1984. Quality Resorts further alleges that it performed management services for Silver Creek valued at $25,000, for which it was never paid. FSLIC foreclosed on Silver Creek and purchased the property at the foreclosure sale. Defendant claims that FSLIC's refusal to pay Quality Resorts for the services performed and expenses advanced constitutes unjust enrichment in the sum of $282,-238.74.

Quality Resorts also asserts that it managed The Inn at Snowshoe for Marcon Partnership, construction of which was financed by San Marino. Defendant apparently purchased ski outfits, equipment and operating supplies for use at Silver Creek and stored them at The Inn at Snowshoe. Marcon Partnership purportedly took possession of the items without defendant's permission, and FSLIC then took possession from Marcon. Quality Resorts contends that FSLIC refuses to return the items or to pay for them, that such action constitutes conversion, and that Quality Resorts is entitled to $100,000 in addition to the damages described above.

## II. FSLIC's Motion to Dismiss the Counterclaims

FSLIC argues that this Court lacks subject matter jurisdiction over Quality Resorts' counterclaims because Congress has granted FSLIC and the Federal Home Loan Bank Board ("Bank Board") original jurisdiction over all claims against FSLIC as receiver of a savings and loan association. Plaintiff contends that the validity of Quality Resorts' claims against FSLIC must first be decided by the receiver. If defendant disputes the determination, it can seek

administrative review before the Bank Board, followed by judicial review pursuant to the Administrative Procedure Act.

FSLIC relies on two statutory provisions to support its contention. 12 U.S.C. § 1464(d)(6)(C) states:

Except as otherwise provided in this subsection, no court may ..., except at the instance of the [Federal Home Loan Bank] Board, restrain or affect the exercise of powers or functions of a conservator or receiver.

12 U.S.C. § 1729(d) provides:

In connection with the liquidation of insured institutions, [FSLIC] shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board....

Read together, these provisions support FSLIC's contention that FSLIC has the power to resolve claims against the receiver and the insured institution, and no court may interfere with the receiver's functions or powers, except at the request of the Bank Board. Indeed, the only circuit to construe these statutory provisions, and several district courts which addressed the issue, have upheld FSLIC's position. However, the amendments which created the version of 12 U.S.C. § 1729(d) cited above were enacted with a "sunset provision." Therefore, this Court must determine which version of § 1729 is applicable to this case.

### A. The Sunset Provisions of 12 U.S.C. § 1729

■ 12 U.S.C. § 1729 was amended by the passage of the Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, 96 Stat. 1469, which resulted in the language quoted above. Section 141(a)(6) of the 1982 Act stipulated that the amendments to § 1729(c)(1), (2) and (3), and to § 1729(d) would expire on a given date,

and thereafter the sections would read as they had before the amendments were adopted. 96 Stat. 1489. The termination of the amendments, however, would "have no effect on any action taken or authorized while such amendment was in effect." § 141(b), 96 Stat. 1489.

The expiration date was originally April 15, 1986. *See* Historical Note to 12 U.S. C.A. § 1729 (1976 & Supp.1986). Congress extended the expiration date to July 15, 1986, Pub.L. No. 99–278, 100 Stat. 397; then to September 15, 1986, Pub.L. No. 99–400, 100 Stat. 902; and finally to October 13, 1986, Pub.L. No. 99–452, 100 Stat. 1140. A bill to extend the termination date until June 30, 1987, was not acted upon. H.R. 5711, 99th Cong., 2d Sess., 132 Cong. Rec. H11,118 (1986). Thus the 1982 amendments expired on October 13, 1986, and thereafter the language of 12 U.S.C. § 1729(d) reads as it did prior to the 1982 amendments.

FSLIC commenced this action as receiver for San Marino on April 17, 1986. At that time the 1982 amendments were still in effect. Congress clearly stated that the subsequent termination of any amendment "shall have no effect on any action taken or authorized while such amendment was in effect." Pub.L. No. 97–320, § 141(b), 96 Stat. 1489. Therefore, even though the sun has set on the 1982 amendments, this Court will adjudicate the instant controversy according to the statutory language existing at the time FSLIC brought suit against Quality to recover receivership assets.

### B. Subject Matter Jurisdiction

■ Neither the Supreme Court nor the Fourth Circuit has interpreted 12 U.S.C. §§ 1464(d)(6)(C) and 1729(d). The Fifth Circuit recently held that these provisions foreclose the courts from original jurisdiction over claims against FSLIC as receiver for a savings and loan association. In *North Mississippi Sav. & Loan Ass'n v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), the Fifth Circuit

affirmed the district court's dismissal of Hudspeth's counterclaims against FSLIC, the receiver for North Mississippi Savings and Loan Association.

John Hudspeth was once president of North Mississippi Savings and Loan Association, a state-chartered institution (Old North). He stepped down in 1977, and Old North began paying him a monthly amount under what Hudspeth claimed was a deferred compensation agreement. In 1982, Old North sought a declaration that its agreement with Hudspeth was either nonexistent or terminable, and Hudspeth counterclaimed for specific performance or damages for breach of contract. Old North continued making payments until April 1983. At that time, Old North went into receivership and the Federal Home Loan Bank Board named FSLIC receiver. FSLIC formed a new institution (New North) and transferred most of Old North's assets and liabilities to New North. It did not transfer the alleged compensation agreement with Hudspeth, and it terminated the periodic payments to him. Hudspeth filed an amended counterclaim joining New North as a party and seeking actual and punitive damages from Old North and New North.

The district court construed Hudspeth's counterclaim as a challenge to the validity of FSLIC's termination of the compensation contract. It relied on 12 U.S.C. §§ 1729(d) and 1464(d)(6)(C) in holding that original jurisdiction over the conduct of FSLIC was with the Bank Board rather than any court. The Fifth Circuit affirmed, noting that Congress, in passing 12 U.S.C. § 1464(d)(6)(C), "wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interfered with by other judicial or regulatory authorities." *Hudspeth, supra,* 756 F.2d at 1101. The court further held that "resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function.... Given the overriding Congressional purpose of expediting and facili-

tating the FSLIC's task as receiver, such a delay is a 'restraint' within the scope of the statute." *Id.* at 1102. *See also Chupik Corp. v. Fed. Sav. & Loan Ins. Corp,* 790 F.2d 1269, 1270 (5th Cir.1986). Thus, any claims that would affect the FSLIC's exercise of powers as a receiver must be routed through the administrative process.

The language of 12 U.S.C. § 1729(d) specifies that FSLIC has the power to resolve all claims against the failed savings and loan association, subject only to the regulation of the Bank Board. The Bank Board has published regulations governing FSLIC's conduct as a receiver, including its powers with respect to creditors' claims. The Bank Board authorized FSLIC to hear all claims and to allow only those "proved to its satisfaction." 12 C.F.R. § 569a.8(b). FSLIC's determination is appealable to the Bank Board, 12 C.F.R. § 569a.8(d), and that decision is subject to judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. *See Hudspeth,* 756 F.2d at 1103.

Numerous district courts have ruled that 12 U.S.C. §§ 1464(d)(6)(C) and 1729(d) prohibit adjudication of claims to receivership assets or against FSLIC in its capacity as receiver. *See, e.g., First American Sav. Bank v. Westside Fed. Sav.,* 639 F.Supp. 93, 99 (W.D.Wash.1986) ("12 U.S.C. § 1729(d) removes all claims against the receivership to a single forum, and 12 U.S.C. § 1464(d)(6)(C) effectively stays judicial action with respect to those claims in any other forum."); *Baer v. Abel,* 637 F.Supp. 347, 354 (W.D.Wash.1986) ("Congress has forbidden courts to interfere with the powers and functions of FSLIC as receiver, 12 U.S.C. § 1464(d)(6)(C), and authorized only the FHLBB to regulate FSLIC. 12 U.S.C. § 1729(d)."), *related opinion,* 649 F.Supp. 25 (W.D.Wash.1986) (12 U.S.C. §§ 1464(d)(6)(C) and 1729(d) preclude a court from exercising subject matter jurisdiction over counterclaims against FSLIC as receiver); *Lyons Sav. & Loan Ass'n v. Westside Bancorp., Inc.,* 636 F.Supp. 576, 579–82 (N.D.Ill.1986) (these statutory provisions foreclose the federal

courts from presiding over litigation of claims against a bank in receivership); *Murdock-SC Assoc. v. Beverly Hills Fed. Sav. & Loan Ass'n,* 624 F.Supp. 948, 955 (C.D.Cal.1985) (12 U.S.C. § 1729 and the regulations governing FSLIC's powers as receiver—"when viewed in conjunction with section 1464(d)(6)(C)—evidence Congress' intention that they should serve as the sole remedy for creditors of failed savings and loan associations."); *Rembold v. Gibraltar Sav. & Loan Ass'n,* 624 F.Supp. 1006 (W.D.Wash.1985); *Gibraltar Bldg. & Loan v. State Sav. & Loan Ass'n,* 607 F.Supp. 722, 723 (N.D.Cal.1985) ("[W]here the relief requested would interfere with ... the effect of any exercise of receivership power, the suit must be dismissed in favor of administrative proceedings before the FHLBB."); and *First Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n,* 531 F.Supp. 251, 253 (D.Hawaii 1981) (§ 1464(d)(6)(C) prohibits a court from adjudicating plaintiff's request to restore its assets sold by FSLIC).

Quality Resorts' counterclaims against FSLIC, though couched in terms of unjust enrichment and conversion, are effectively claims against receivership assets. Quality Resorts seeks restitution for monies that it advanced for Silver Creek Ski Resort and equipment that it purchased for the resort, as well as compensation for management services that it performed for ARS. ARS obtained a loan from San Marino which was secured by the property, furnishings and equipment at Silver Creek. ARS apparently defaulted on the loan because FSLIC, as receiver for San Marino, foreclosed on the Silver Creek property. Thus ARS's Silver Creek assets became receivership assets.

Quality Resorts' counterclaims entail a request for recovery from receivership assets, and a challenge to FSLIC's actions as receiver. Adjudication of the counterclaims would interfere with FSLIC's powers to resolve claims and to manage and distribute receivership assets, and thus would "restrain" and "affect" FSLIC's functions as a receiver. 12 U.S.C.

§§ 1464(d)(6)(C) and 1729(d) prohibit consideration of such claims.

Defendants argue that Quality Resorts' counterclaims are against FSLIC in its corporate capacity, not as receiver for San Marino, and therefore 12 U.S.C. §§ 1464(d)(6)(C) and 1729(d) are not applicable to this case. Defendants misinterpret the action. FSLIC succeeded to all the rights, titles, powers and privileges of San Marino when it became receiver in December 1984. One of the rights which FSLIC acquired was the right to foreclose on secured property in the event of default, and to administer that asset as part of its receivership obligations. Quality Resorts' counterclaims challenge FSLIC's administration of receivership assets acquired when it foreclosed on property securing loans made by San Marino. Thus defendant's counterclaims are directed against FSLIC as receiver, and cannot be litigated at this time in this Court.

### III. Conclusion

For the foregoing reasons, FSLIC's motion to dismiss defendant Quality Resorts' counterclaims is granted. Because 12 U.S.C. §§ 1464(d)(6)(C) and 1729(d) are dispositive, this Court need not reach the issue of sovereign immunity raised by plaintiff.