**SUMMERTREE VENTURE III, Neil Block and Jon E. Anderson, Appellants,**

v.

**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, Receiver for Mainland Savings Association, Appellee.**

**No. C14–86–924–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 5, 1987.

Rehearing Denied Dec. 17, 1987.

**448**

Scott Douglas Cunningham, Houston, for appellants.

Lee R. Larkin, Scott A. Brister, J. Scott Carothers, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

The issue dispositive of this appeal is whether the Federal Savings & Loan Insurance Corporation (FSLIC), in its capacity as a receiver for an insolvent, insured, state-chartered savings and loan association, is susceptible to the subject matter jurisdiction of the courts of the State of Texas. We hold that Congress has not given the FSLIC the exclusive power to adjudicate appellants' claims. The trial court does have subject-matter jurisdiction. We reverse and remand so that appellants may pursue their causes of action.

On March 26, 1986, appellants filed a civil action against Mainland Savings Association (MSA) and Mainland Building & Development Corporation (MBDC), a wholly owned subsidiary of MSA. Appellants sought a temporary restraining order to block a foreclosure sale posted for April 1, 1986, and alleged multiple causes of action against MSA and its subsidiary in connection with the negotiation and administration of a 3.5 million dollar construction loan and workout on an apartment project in Harris County. After MSA and MBDC agreed to pass the posted foreclosure, appellants withdrew their application for injunctive relief.

On April 4, 1986, the Federal Home Loan Bank Board declared Mainland Savings Association insolvent and appointed the FSLIC receiver responsible for liquidation of the association. The FSLIC intervened in this cause and attempted removal to federal court, but the case was remanded. After remand, neither MSA nor the FSLIC answered the state court suit by the answer date. Appellants abandoned by nonsuit all claims against MBDC and their claims for monetary recovery against MSA and the FSLIC. (They still seek equitable remedies of voidance and cancellation of the loan, Deed of Trust and personal guarantees.) A default judgment against MSA and the FSLIC was granted. MSA and the FSLIC timely filed a motion to set aside the default judgment, and alternatively, a motion for new trial. After a hearing, the court set aside the default judgment. In a later hearing the court heard appellant's motion to reconsider the order setting aside the default judgment and the FSLIC's motion to dismiss for lack of subject matter jurisdiction.

In two points of error appellants complain of the trial court's actions in dismissing their case and setting aside the default judgment. The FSLIC defends the trial court's dismissal by arguing that the state court was stripped of its subject matter jurisdiction when the Federal Home Loan Bank Board (Bank Board) made the FSLIC receiver of the defendant savings and loan association, and that only the FSLIC now has the power to initially adjudicate appellants' claims.

The FSLIC's assertions rest first on 12 U.S.C. § 1464(d)(6)(C) (1982). It reads:

Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, *restrain or affect* the exercise of powers or functions of a conservator or receiver.

(Emphasis added.) The FSLIC asserts that judicial adjudication of appellants' claims would "restrain or affect" the exercise of its receivership powers in violation of this statutory command.

■ However, section 1464(d)(6)(C) does not set out or describe what powers or functions the FSLIC as receiver has been given. Those powers are described in 12 U.S.C. § 1729(d) (1982). It reads [1]:

> In connection with the liquidation of insured institutions, the Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Bank Board, or, in cases where the Corporation has been appointed conservator, receiver, or legal custodian solely by a public authority having jurisdiction over the matter other than said Board, subject only to the regulation of such public authority.

Several courts have accepted the FSLIC's position. The leading case is *North Mississippi Savings & Loan Ass'n v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). The Fifth Circuit reaffirmed the *Hudspeth* holding that all claims against the FSLIC must be made first through the administrative process in *Chupik Corp. v. FSLIC*, 790 F.2d 1269, 1270 (5th Cir.1986), and in *Coit Independence Joint Venture v. First South, F.A.*,

829 F.2d 563 (5th Cir.1987). *See also: Lyons Savings & Loan Ass'n v. Westside Bank Corporation*, 828 F.2d 387 (7th Cir. 1987). District court opinions following *Hudspeth* are too numerous to cite.

The Ninth Circuit has declined to follow *Hudspeth*, and has concluded that nothing in the pertinent statutes, or in the legislative histories to those statutes, indicates that the FSLIC, as a receiver authorized to liquidate an institution, has the power to adjudicate disputed claims. *Morrison–Knudsen Co., Inc. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir.1987), *cert. pending*.

The question of subject matter jurisdiction in this instance is clearly a matter of federal law; its answer depends upon interpretation of federal statutes. Texas appellate courts, when deciding issues of federal law, generally look to "applicable federal decisions." *Port Terminal Railroad Ass'n v. Ross*, 155 Tex. 447, 289 S.W.2d 220, 226 (1956). Rights conferred by federal statute and regulation "should be governed by the federal court's construction of the statute and regulation." *Olson v. Holmes*, 571 S.W.2d 211, 213 (Tex.Civ.App. —Austin 1978), *writ ref'd n.r.e.*, 587 S.W. 2d 678 (Tex.1979) (expressly approving Austin court's reasoning on this point).

■ In this case the federal court decisions construing the pertinent statutory provisions are in conflict, and the United States Supreme Court has not yet decided

---

1. The parties dispute which version of section 1729(d) is applicable. The disputed language begins with the first "subject only to." We agree with the FSLIC that the version quoted applies. Section 1729 was amended by the passage of the Garn–St. Germain Depository Institutions Act of 1982, Pub.L. 97–320, 96 Stat. 1469. Section 141(a)(6) of the 1982 Act stipulated that the amendments to sections 1729(c)(1), (2), and (3), and to 1729(d) would expire on a given date and thereafter the sections would read as they had before the amendments were adopted. 96 Stat. 1489. The termination of the amendments, however, would have no effect on any action taken or authorized while such amendment was in effect. § 141(b), 96 Stat. 1489. The termination date was extended to October 13, 1986, by Act of October 8, 1986, Pub.L. No. 99–452,

100 Stat. 1140. The FSLIC was appointed before October 13, 1986, so the Garn–St. Germain Amendments apply. Even if appellants were correct, their argument gets them nowhere. Under both versions, the FSLIC is authorized to act out its powers subject only to the Federal Home Loan Bank Board. Before the 1982 amendment section 1729(d) read: "subject only to the regulation of the court or other public authority having jurisdiction over the matter." But section 1729(c)(3) stated: "In connection with the liquidation of any such institution, the language 'the court or other public authority having jurisdiction over the matter' in subsection (d) of this section shall mean said Board." 12 U.S.C.A. § 1729(c)(3) (1980). *See FSLIC v. Quality Inns, Inc.*, 650 F.Supp. 918, 920 (D.C.Md. 1987).

the issue.[2] Must we follow the Fifth Circuit?

At least one Texas appellate court has stated (without discussion or citation of authority) that when faced with conflicting decisions issued by the Fifth Circuit and another federal circuit court of appeals, it would follow the Fifth Circuit Court of Appeals, "if required to choose." *Deep South Oil Co. v. Texas Gas Corp.*, 328 S.W.2d 897, 906 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.).

However, in *Woodard v. Texas Department of Human Resources*, 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.), the court, in answering a federal constitutional question stated:

Respectful consideration is due a lower federal court decision ...; yet ... state courts are not concluded by a lower federal court decision on an identical question of law which arises in a later unrelated case. The rationale expressed is that while the state courts and lower federal courts are subject to the supervisory jurisdiction of the United States Supreme Court as the final arbiter on all questions of federal constitutional law, there is a parallelism, but not a paramountcy, for both the state courts and the lower federal courts in passing on federal constitutional questions.

*Id., followed in In re H.D.O.*, 580 S.W.2d 421, 423–24 (Tex.Civ.App.—Eastland 1979, no writ). *See also Olvera v. State*, 725 S.W.2d 400, 404 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (refusing to follow federal district court decisions holding a Texas statute unconstitutional). *See generally*, Annotation, *Duty of State Courts to Follow Decisions of Federal Courts, Other than the Supreme Court, on Federal Questions*, 147 A.L.R. 857 (1943).

*Corpus Juris Secundum* states:

Decisions of the Lower federal courts on federal questions which have not been passed on by the supreme court of the United States should, according to some authorities, be followed by the state courts, although it has also been considered that such decisions, while persuasive, are not binding on the state courts, and a conflict between decisions of the federal court leaves the state courts free to decide the question themselves.

21 C.J.S. *Courts* § 206 (1940).

The Texas Court of Criminal Appeals has repeatedly stated that it is not bound by decisions of the lower federal courts. *E.g., Stewart v. State*, 686 S.W.2d 118, 121 (Tex. Crim.App.1984); *Blackmon v. State*, 642 S.W.2d 499, 500 (Tex.Crim.App.1982).

We conclude that we are not bound by the *Hudspeth* decision nor by the district court decisions following it. We will look independently at the statutes, regulations, and legislative history to determine the issue.

■ *Hudspeth* and many of the cases following it make reference to isolated portions of legislative histories to the origin of sections 1464 and 1729 and their amendments. We think it is helpful to look into the entire history of these and other provisions before analyzing the arguments before us.

In 1933 Congress created the Federal Home Loan Bank Board and empowered it to organize, charter, and regulate federal savings and loan associations. *See* Home Owners' Loan Act of 1933, Pub.L. No. 73–43, 48 Stat. 128 (codified as amended at 12 U.S.C. §§ 1461 to 1468 (1982 & Supp.1985)). Included in the Bank Board's powers was the "power to appoint a conservator or receiver to take charge of the affairs" of federal associations. 1933 Act § 5(d).

In 1934, Congress created the Federal Savings and Loan Insurance Corporation to insure the accounts of both federal savings and loan associations and state-chartered

---

**2.** Currently pending before the United States Supreme Court are three petitions for writ of certiorari involving the same jurisdictional issues raised in this appeal: *Zodhi v. FSLIC*, No. 87–244 (*cert. filed*, Aug. 5, 1987) (opinion below, *FSLIC v. Bonfanti*, 826 F.2d 1391 (5th Cir.1987));

*FSLIC v. Stevenson Associations, Inc.*, No. 87–451 (*cert. filed*, Sept. 17, 1987); and *Murdock–SC Associates*, No. 87–452 (cert. filed, Sept. 17, 1987) (opinion below, *Murdock–SC Associates v. Beverly Hills Savings*, 815 F.2d 82 (9th Cir. 1987)).

building and loan, savings and loan, and homestead associations and cooperative banks. National Housing Act, Title IV, Pub.L. No. 73–479, 48 Stat. 1246, 1255 (codified as amended at 12 U.S.C. §§ 1701, 1724 to 1730 (1982 & Supp.1985)). The FSLIC, from its creation, had the power "to sue and be sued, complain and defend, in any court of law or equity, State or Federal." National Housing Act § 402(c)(4) (as amended at 12 U.S.C. § 1725(c) (1982)).

In the event a federal savings and loan association was in default, the FSLIC was to be appointed as conservator or receiver and was authorized "(1) to take over the assets of and operate such (federal) association, (2) to take such action as may be necessary to put it in a sound and solvent condition, (3) to merge it with another insured institution, (4) to organize a new Federal savings and loan association to take over its assets, or (5) to proceed to liquidate its assets in an orderly manner, whichever shall appear to be to the best interests of the insured members of the association in default." National Housing Act § 406(b) (as amended at 12 U.S.C. 1729(b)(1) (1982)).[3]

If a state-chartered insured institution was in default, the FSLIC had the authority to accept appointment as conservator or receiver. If the FSLIC was appointed, it was to have the same powers and duties discussed above. National Housing Act § 406(c) (as amended at 12 U.S.C. 1729(c)(1)(A)).

Subsection (d) of section 406 of the 1934 Act further provided:

(d) In connection with the liquidation of insured institutions in default, the Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the court or other public authority having jurisdiction over the matter.

National Housing Act, Title IV, Pub.L. No. 73–479, 48 Stat. 1246, 1260 (codified as amended at 12 U.S.C. 1729(d) (1982)).

The first major amendments to these provisions were made in 1966 in the Financial Institutions Supervisory Act of 1966, Pub. L. No. 89–695, 80 Stat. 1028 (codified as amended at 12 U.S.C. §§ 1464, 1730 (1982 & Supp.1985)). The principal objective of Congress in enacting the 1966 provision was to give the federal government the power to quickly stop illegal, unsound, or irregular banking practices. See S.Rep. No. 1482, 89th Cong., 2d Sess., reprinted in 1966 U.S. Code Cong. & Admin.News 3532, 3536. To this end Congress substantially amended subsection (d) of section 5 of the Home Owners' Loan Act of 1933. It added to the Federal Home Loan Bank Board's enforcement arsenal the power to issue cease and desist orders and suspension or removal orders to federal and state-chartered associations. Temporary or permanent cease and desist orders can be issued to an institution that has violated a law, rule, regulation or charter, or other written condition or agreement, or that has engaged or is engaging in unsafe or unsound practices; or there is reasonable cause to believe it is about to engage in those practices. Id. at p. 3533. If a federal association is involved, the Bank Board, as an ultimate sanction, can appoint a conservator or receiver for an association in certain circumstances. Act of 1966, § 101 (codified as amended at 12 U.S.C. § 1464(d)). In this context what is now 12 U.S.C. § 1464(d)(6)(C) appeared in the law. 80 Stat. at 1033.

Under the 1966 Act, the ultimate sanction available when a state-chartered association engaged in illegal acts or unsound banking practices was to terminate its status as a FSLIC–insured institution. Act of 1966, § 102, 80 Stat. at 1036–47 (amending section 407 of the National Housing Act) (codified as amended at 12 U.S.C. § 1730)).

---

**3.** In 1982 additional authority was granted "to make such other disposition of the matter as it deems appropriate." See Garn–St. Germain De-

pository Institution Act of 1982. Pub.L. 97–320, 96 Stat. 1469, 1481.

The issues concerning cease and desist orders involving federal savings associations are to be adjudicated before the Federal Home Bank Board under rules established by the Board. Act of 1966, § 101 (codified as amended at 12 U.S.C. § 1464(d)(7)). These rules are found at 12 C.F.R. §§ 509.1 to 509.22 (1987).

The issues concerning cease and desist orders and termination of insured status of other (state-chartered) institutions are to be heard in the federal judicial district in which the principal office of the institution is located. Act of 1966, §§ 101–02, 80 Stat. 1033–34, 1041–42 (12 U.S.C. § 1730(j)(1)).[4]

In 1968 Congress passed the Bank Protection Act of 1968, Pub.L. No. 90–389, 82 Stat. 294, which for the first time allowed the Home Loan Bank Board to appoint the FSLIC as receiver (rather than wait or hope to be appointed by a state authority). Three conditions must be met to invoke this power: (1) a conservator or receiver has been appointed for at least 15 days under state law or the association has been closed under state law; (2) the Board determines that the same grounds required for the appointment of a receiver for a federal association exists for the state association, and (3) savings account holders are unable to withdraw their funds. Act of 1968 § 6 (12 U.S.C. § 1729(c)(2)). Judicial review of the Board's appointment of the FSLIC as receiver of a state association is to be conducted the same as review of the appointment of the FSLIC as receiver over federal associations. Act of 1968, § 6 (12 U.S.C. § 1729(c)(3)).. In other words, 12 U.S.C. § 1464(d)(6)(C) became applicable to the state-chartered insured associations placed under FSLIC receivership by the Federal Home Loan Bank Board. See S.Rep. No. 1263, 90th Cong., 2nd Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2530, 2539.

The principal aim of Congress in passing the 1968 act was to "enable the FSLIC to effect an orderly disposition of the assets of insured associations whose depositors have been reimbursed by FSLIC insurance payments." Id. at 2531. The committee report noted a "rash of state-chartered associations" had been placed into receiverships. Id. at 2536. When the FSLIC was not chosen by the state authority as receiver, it was hampered in obtaining information or financial reports concerning conduct of the receivership and powerless to speed up the liquidation process. Id. at 2536–37. Under the 1968 amendments the Federal Home Loan Bank Board still could not appoint a receiver unless the state itself had acted to place the association in custody. Id. at 2538.

Finally, in 1982, Congress granted the Federal Home Loan Bank Board even greater authority to place a state-chartered insured association into FSLIC receivership even before any state action. The Garn–St. Germain Depository Institutions Act, Pub.L. No. 97–320, Title I, Part B, § 122(d), 96 Stat. 1469, 1482 (codified at 12 U.S.C. § 1729(c)(1)(B) (1982)), provided that the Home Loan Bank Board had the exclusive power to appoint the FSLIC as sole conservator or receiver over a state-chartered insured institution whenever the Board determined that any of the grounds specified in section 1464(d)(6)(A)(i), (ii) or (iii) existed (i.e., insolvency; substantial dissipation of assets or earnings due to violations of law, rules, or regulations, or to any unsafe or unsound practices; or an unsafe or unsound condition to transact business). This power over state-chartered associations was approximately equal to what the Board already had over federal associations. See S.Rep. No. 97–536, 97th Cong.2d Sess. 48, reprinted in 1982 U.S.Code Cong. & Admin.News 3054, 3102. These portions of the Garn–St. Germain Act were considered emergency provisions and were to sunset. (See note 1, below.) They are the statutory authority cited by the Federal Home Loan Bank Board when it placed Mainland Savings Association under receivership because of insolvency. The law has now reverted to its 1968 state.

---

4. New provisions regarding jurisdiction of federal and state courts were also added in 1966, 80 Stat. 1042 (12 U.S.C. 1730(k) (1982)).

We have detailed the history of these provisions in order to test the hypotheses of the Fifth Circuit and other courts that Congress expressed its intent to "switch all claims to the administrative track" once the FSLIC was appointed receiver. *North Mississippi Savings & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1101 (5th Cir.1985). *See also Colony First Federal Savings & Loan Ass'n v. FSLIC*, 643 F.Supp. 410, 415–416 (C.D.Cal.1986); *Lyons Savings & Loan Association v. Westside Bank Corporation, Inc.*, 636 F.Supp. 576, 580 (M.D. Ill.1986). These courts cite committee reports to the 1966 and 1968 acts, but the provision setting forth the *powers and functions* of the FSLIC in connection with the liquidation of insured institutions in default (12 U.S.C. § 1729(d)) was not significantly changed by these acts. The reasons the FSLIC can be appointed, the timing of the appointment, and the entity that is authorized to make the appointment have changed throughout the years, but the powers and functions of the receiver in connection with the liquidation have not been expanded since the original acts. The question here is whether that power includes the power to adjudicate causes of action a creditor had filed in state court against the institution before the institution was placed in the hands of the FSLIC as receiver.

We agree with the Ninth Circuit that the FSLIC does not have the power to adjudicate claims. In particular, we agree that:

The rock upon which FSLIC's arguments break is that a receiver's ordinary functions do not include adjudication. Judicial adjudication, to repeat, does not restrain or affect a receivership; it simply determines the existence and amount of claims that a receiver is to honor in its eventual distribution of assets. *Cf. Morris v. Jones*, 329 U.S. 545, 549, 67 S.Ct. 451, 454, 91 L.Ed. 488 (1947) ("The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have."). FSLIC's basic contention is that Congress intended the agency's receivership powers to go beyond those of an ordinary receiver. It has not established its case.

*Morrison–Knudsen Co., Inc. v. CHG International, Inc.*, 811 F.2d 1209, 1217 (9th Cir.1987). Section 1729(d) empowers the FSLIC to "do all things that may be necessary in connection therewith," but we reject the FSLIC's argument that the power to adjudicate is "necessary" to orderly liquidation. Further, the explicit powers given the receiver to "settle, compromise, or release claims" are to some extent incompatible with the power to adjudicate. *Id.* at 1219.

Some courts have looked to Home Loan Bank Board regulations at 12 C.F.R. § 569a.8 to find support for the theory that the FSLIC as receiver may adjudicate claims. These regulations authorize the FSLIC to "disallow in whole or in part or reject in whole or in part any creditor claim or claims of security, or priority not proved to its satisfaction." 12 C.F.R. § 569a.8 (1987). "Paying or refusing to pay, however, is not an adjudication of a claim." *Morrison–Knudsen*, 811 F.2d at 1218. The Board's regulations concerning filing and approval or disapproval of claims are quite brief and not specific. However, in another part the Board has instituted detailed Rules of Practice and Procedure in Adjudicatory Proceedings. 12 C.F.R. §§ 509.1 to 509.22 (1987). The scope of these regulations in this part are set out in section 509.1, which makes no mention of adjudication of creditors' claims. The adjudicatory proceedings included concern the issuing of cease and desist orders and initiating removal actions. These procedures became a part of the Bank Board's powers through the Financial Institutions Supervisory Act of 1966. As noted above, section 1464(d)(6)(C) became law through the 1966 Act. We agree with appellants that section 1464(d)(6)(C) was only intended to preclude court challenges to the *appointment* of the FSLIC as receiver except as otherwise statutorily provided in section 1464(d)(6)(A). We find no support in the regulations for the FSLIC's position.

The FSLIC argues that just as the court-appointed receiver is immune from suit, such that his actions may be challenged only in the appointing court, so the FSLIC as receiver is immune from suit and its actions may be challenged only before the Bank Board. However, the FSLIC is not, in this instance, a court-appointed receiver, and enjoys no judicial immunity.

Neither do we agree with the FSLIC that the Bank Board itself has sovereign immunity in this context. The FSLIC has conceded that by granting the FSLIC the power to sue and be sued (12 U.S.C. 1725(c)(4)) Congress at least partially waived sovereign immunity from suit. The FSLIC contends that such waiver is limited by section 1464(d)(6)(C) when read in conjunction with section 1729(d). Again, this argument hinges upon the premise that Congress intended that the FSLIC have power to adjudicate creditors' claims. "The sovereign immunity terminology is otiose; it adds nothing to FSLIC argument." *Morrison–Knudsen*, 811 F.2d at 1214.

We hold that dismissal of appellant's action was improper and sustain point of error one. We see no need to address the constitutional questions raised by appellants in their supplemental brief.

We overrule point of error two in which appellants attempt to appeal the court's action in setting aside the default judgment. Setting aside a default judgment is tantamount to the granting of a new trial. It is not an appealable order. *Mori Seiki Co. v. Action Machine Shop, Inc.*, 696 S.W.2d 414 (Tex.App.—Houston [14th Dist.] 1985, no writ).

Because the trial court did have subject matter jurisdiction and the FSLIC is not immune from suit, we reverse and remand so that the cause can be adjudicated in court.

