Indalecio M. OLVERA, Jerry Wayne Schmidt, James Roy Hunt, James Robert Sevier, Jr., Appellants,

v.

STATE of Texas, Appellee.

Nos. 01–85–00874–CR, 01–85–00877–CR, 01–85–00878–CR and 01–86–00105–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 1987.

Catherine Greene Burnett, Morrow & Burnett, Carl Dudensing, Dudensing & Webb, Houston, for appellants.

John B. Holmes, Jr., Harris County Dist. Atty., Kathryn Giannaula, Lorraine Parker, Harris County Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

DUGGAN, Justice.

Following a joint non-jury trial, appellants were convicted of the misdemeanor offense of mass picketing under Tex.Rev. Civ.Stat.Ann. art. 5154d, sec. 1(1) (Vernon 1971). The trial court assessed punishment in each case at three days confinement and a $100 fine.

Although the appellants entered pleas of not guilty, they each signed stipulations of evidence that were accepted by the trial court and that tracked the allegations of the respective informations. Each information charged that the named appellant did, in concert with two other named appellants, "intentionally or knowingly engage in mass picketing by approaching within 50 feet of an entrance to the premises being picketed."

The trial court denied appellants' motions to quash their respective informations.[1] No other evidence besides the stipulations was introduced. Appellants each assert two identical points of error on appeal.

Appellants contend by their first point of error that section 1(1) of art. 5154d is facially unconstitutional[2] because the "numbers-distance formula" of sec. 1(1), used to define "mass picketing," is arbitrarily overbroad and provides no reference to the surrounding circumstances.

The overbreadth doctrine is based on the principle that "a governmental purpose to control or prevent activities constitutionally subject to regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Gholson v. State*, 667 S.W.2d 168, 172 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd) (citing *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964)).

Article 5154d provides in part:

Section 1. It shall be unlawful for any person, singly or in concert with others, to engage in picketing or any form of picketing activity that shall constitute mass picketing as herein defined.

"Mass picketing," as that term is used herein, shall mean any form of picketing in which:

1. There are more than two (2) pickets at any time within either fifty (50) feet of any entrance to the premises being picketed, or within fifty (50) feet of any other picket or pickets.

2. Pickets constitute or form any character of obstacle to the free ingress to and egress from any entrance to any premises being picketed or to any other premises, either by obstructing said free ingress or egress by their persons or by the placing of vehicles or other physical obstructions.

The term "picket," as used in this Act, shall include any person stationed by or acting for and in behalf of any organization for the purpose of inducing, or attempting to induce, anyone not to enter the premises in question or to observe the premises so as to ascertain who enters or patronizes the same, or who by any means follows employees or patrons of the place being picketed either to or from said place so as either to observe them or attempt to persuade them to

---

1. The motions to quash are not in the record, but the docket sheets reflect that they were filed and that the trial court denied the motions. Also, the State's response to appellants' motions to quash indicates that the issue of the constitutionality of art. 5154d, sec. 1(1) was raised and discussed in the motions.

2. Appellants initially state that art. 5154d, sec. 1(1) is facially unconstitutional on both federal and state grounds and cite the First Amendment of the U.S. Constitution, the Fourteenth Amendment, and two provisions of the Texas Constitution, art. I, sec. 8 and art. I, sec. 27. However, because their arguments rest squarely on interpretations of the First Amendment, we shall analyze the construction of art. 5154d, sec. 1(1) under the First Amendment.

cease entering or patronizing the premises being picketed.

The term "picketing," as used in this Act, shall include the stationing or posting of one's person or of others for and in behalf of any organization to induce anyone not to enter the premises in question, or to observe the premises so as to ascertain who enters or patronizes the same, or to follow employees or patrons of the place being picketed either to or from said place so as either to observe them or attempt to persuade them to cease entering or patronizing the premises being picketed.

Picketing is recognized as a mode of expression and a means of disseminating information that is protected by the freedom of speech guarantee of the First Amendment. *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). However, the U.S. Supreme Court has held that picketing is not "pure speech," but an activity that intertwines elements of speech and conduct. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). A distinction exists between the kind of freedom afforded those who communicate ideas by pure speech, and those who communicate ideas by *conduct,* such as "patrolling, marching, and picketing on streets and highways." *Cox v. Louisiana,* 379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965). When "speech" and "non-speech" elements are combined in the same course of conduct, "a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). The "speech plus" character of picketing permits its regulation by the State.

The right to use a public place for expressive activity may be restricted only for weighty reasons.

Clearly, government has no power to restrict such activity because of its message. Our cases make equally clear, however, that reasonable time, place and manner regulations may be necessary to

further significant governmental interests, and are permitted.

*Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972) (footnote citing eight additional Supreme Court cases for this proposition omitted).

State regulation of conduct that infringes on First Amendment freedoms is justified if four factors coincide:

[1] if [the regulation] is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

In examining the first of *O'Brien's* four criteria in relation to art. 5154d, sec. 1(1), we observe that it is well established that the State has the right to regulate the use of city streets and other facilities in order to assure the safety and convenience of the public in its use of them. *Haye v. State,* 634 S.W.2d 313, 315 (Tex.Crim.App. 1982).

Second, as to the furtherance of an important or substantial governmental interest, the Texas Court of Criminal Appeals held in *Sherman v. State,* 626 S.W.2d 520, 526 (Tex.Crim.App.1981), a decision that construed only subsection (2) of art. 5154d, sec. 1, that the State's interest in enacting the statute was the "exercise of the State's historic police power to regulate conduct in the interest of public safety." The court found that the act's preamble showed that the legislative intent was to accommodate, on the one hand, the private interests of the rights of speech and assembly as expressed by picketing activity, and on the other hand, the dual public interests of the "safety and general welfare of the people" and "the right to engage in their daily pursuits without unlawful interference from others." 626 S.W.2d at 526. *Sherman* further found that the legislature's intent in balancing these interests was the

furtherance of the State's interest and duty to prevent violence before it occurred, and not merely to punish or enjoin future violence after its initial occurrence. The court noted that the preamble identified the State's interest as the prevention of violence attendant upon picketing in general, and not strictly labor dispute picketing.

The third criterion, that the government interest be unrelated to the suppression of freedom of expression, is also met. The act is content neutral and applies to all picketing.

The only factor remaining that might bar State regulation is *O'Brien's* fourth criterion, i.e., whether any incidental restriction on First Amendment freedoms is greater than essential to the furtherance of the State interest. We conclude that the limitation is no greater than necessary.

For a statute to be constitutionally infirm for overbreadth when conduct and not "pure speech" is involved, the overbreadth must be not only real but substantial in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). An overbreadth challenge will fail if the statute does not reach a substantial amount of protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

Neither the Texas Court of Criminal Appeals[3] nor the Texas Supreme Court has authoritatively decided the constitutionality of art. 5154d, sec. 1(1). However, the San Antonio Court of Civil Appeals in *Geissler v. Coussoulis*, 424 S.W.2d 709 (Tex.Civ. App.—San Antonio 1967, writ ref'd n.r.e.), found section 1(1) to be constitutional and upheld, in part, a temporary injunction enjoining the defendants from "mass picketing" as defined therein.

The *Geissler* defendants had been picketing a cafe incidental to a labor dispute.

The temporary injunction issued by the district court forbade the defendants from: (1) having more than two pickets at any time within 50 feet of any entrance to the cafe or within 50 feet of any other picket; (2) displaying any red or black banner in connection with the picketing; and (3) displaying such red or black banner accompanied by the use of "huelga," the Spanish word for strike. *Geissler* struck down those portions of the injunction prohibiting display of a red or black banner or the use of the word "huelga," but left intact the "numbers-distance" formula limitation, holding that the formula, prescribed by statute, was neither unconstitutionally vague nor violative of the defendant's rights of freedom of speech or assembly in the manner it was applied to the facts of the case.

The *Geissler* court further stated that because two pickets could be stationed at every entrance to the cafe without violating the statute, the dissatisfied employees could effectively "communicate their message to all persons who attempt to enter the restaurant, be they prospective customers, employees, or suppliers." *Id.* at 712. The court was not concerned with the "wisdom of the legislative decision to formulate a precise, objective standard." *Id.*

Similarly, in *Sabine Area Building Trades Council, AFL–CIO v. Temple Associates, Inc.*, 468 S.W.2d 501 (Tex.Civ.App. —Beaumont 1971, no writ), the court upheld a temporary injunction restraining the defendants from mass picketing under subdivisions (1) and (2) of sec. 1. Citing *Geissler* as holding that art. 5154d, sec. 1(1) is constitutionally valid, the court dismissed defendants' claims that the injunction unconstitutionally abridged their First Amendment rights.

*Sherman*, 626 S.W.2d at 524, identified the State interest involved in art. 5154d as being "the [prevention of] violence by regulating the number and location of pickets and by prohibiting the obstruction of traf-

---

**3.** However, the Court of Criminal Appeals decided in *Sherman v. State*, 626 S.W.2d at 526, that art. 5154d, sec. 1(2) was not unconstitutionally vague nor overbroad because the definition of "obstruction" could be narrowed to mean only "the rendering impassable or the rendering un-

reasonably inconvenient or hazardous the free ingress or egress to the struck premises." In a footnote, the court expressly stated that it was not deciding the constitutionality of any other section of the statute.

fic to and from the struck premise," and held that this State interest is significant.

■ We agree that the prevention of violence and obstruction of traffic to and from ᒻa struck premises are significant and substantial State interests. We also agree with the holding in *Geissler* that the regulation of conduct in the manner prescribed in sec. 1(1) does not unreasonably interfere with the dissemination of speech or the freedom to distribute information.

When construing a state statute, our task is to hold it constitutionally valid if possible. *See Sherman,* 626 S.W.2d at 525.

Appellant's arguments in the instant case are similar to those rejected in *Geissler.* We believe the rationale of *Geissler* is correct, and we follow and adopt its interpretation. *Accord Sabine,* 468 S.W.2d at 502.

We are aware of recent federal district court decisions that have declared art. 5154d, sec. 1(1) unconstitutional on overbreadth grounds. *See Nash v. Texas,* 632 F.Supp. 951 (E.D.Tex.1986); *Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 615 F.Supp. 916 (N.D.Tex.1985).[4]

■ State courts are free to accept or reject lower federal court holdings and to set for themselves such standards as they deem appropriate, as long as the State action does not fall below the minimum standards provided by the federal constitution. *See Brown v. State,* 657 S.W.2d 797 (Tex. Crim.App.1983) (opinion on remand from the United States Supreme Court); *see also Pruett v. State,* 463 S.W.2d 191, 194 (Tex. Crim.App.1971).

■ Though the federal district court in *Nash,* 632 F.Supp. 951, recognized that a state may have a compelling interest in restricting violent behavior at a picket line, it did not agree that the state has a sub-stantial interest in regulating acts that might lead to violence. *Id.* at 969. We strongly disagree.

The State interest [in balancing public and private interests] ... is not simply in the punishment of violence, or in the enjoining of future violence, once it has occurred. The State has at least as great an interest, if not a duty, in the prevention of violence. In the context of a labor dispute, this statute is intended to prevent violence by regulating the number and location of pickets and by prohibiting the obstruction of traffic to and from the struck premises.

*Sherman,* 626 S.W.2d at 524.

*Davis v. Francois,* 395 F.2d 730 (5th Cir.1968), cited by appellants, is distinguishable. There, the Fifth Circuit found invalid a Louisiana municipal ordinance that absolutely limited the number of pickets in front of a residence, business, or public building to *two,* regardless of the time, place, or circumstances. By contrast, art. 5154d, sec. 1(1) does not limit the number of persons who may picket, but merely regulates the manner of picketing by imposing reasonable spatial limitations.

Appellants quote from language in *Geissler* that was dicta to that court's decision:

It may be, as contended by defendants, that the distance and numbers formula, as applied to some situations, would, in fact, render otiose efforts to publicize the facts of a labor dispute by picketing and thus constitute an unreasonable interference with freedom of expression. But this does not require that the statute be relegated to the limbo of unconstitutional legislation. A statute valid as to one state of facts may be invalid as to another.

424 S.W.2d at 712 (citation omitted). The sort of First Amendment interference there

---

**4.** In *Gault,* 17 growers, packers, and trade associations attempted to enjoin the picketing of their onion fields under sec. 1(1) of art. 5154d. The defendants filed a counterclaim alleging, in part, that sec. 1(1) was unconstitutional. The district court agreed that sec. 1(1) was unconstitutionally overbroad and adopted as its reasoning the discussion set forth in *Medrano v. Allee,* 347 F.Supp. 605, 622–624 (S.D.Tex.1972), *rev'd* *on other grounds,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). In *Medrano,* the district court found the numbers-distance formula of art. 5154d, sec. 1(1) overbroad because it "does not attempt to frame its authorization in the context of an evil to be prevented or a right secured, e.g., to prevent violence or to assure reasonable access to a home or business." *Id.* at 624.

speculated or conjectured suggests that the section may be subject to a complaint of unconstitutionality "as applied" in some hypothetical case, but it does not show facial overbreadth. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

In *Medrano v. Allee,* 347 F.Supp. at 622–628, a three-judge district court declared both art. 5154d, sec. 1 and art. 5154f unconstitutional on overbreadth grounds. However, the U.S. Supreme Court vacated that portion of the judgment and remanded the case for further findings and reconsideration on other aspects. *Allee v. Medrano,* 416 U.S. at 820, 94 S.Ct. at 2202. On remand, the plaintiffs withdrew their challenge to the facial unconstitutionality of both statutes. In an unpublished opinion, the federal district court found art. 5154d, sec. 1(1) unconstitutionally applied to the plaintiffs. *Medrano v. Allee,* No. 67–B–36 (S.D.Tex., filed June 24, 1976).

Later, *Gault,* a 1985 federal district court decision, adopted as its reasoning *Medrano's* analysis of constitutional overbreadth, and likewise found art. 5154d, sec. 1(1) unconstitutionally overbroad. *Gault* quoted from *Medrano* at 347 F.Supp. at 624:

> Little imagination is required to envisage circumstances where groups of demonstrators, substantially larger than two persons, standing at closer quarters than 50 feet would not threaten the safe flow of traffic nor unreasonably interfere with free ingress of egress from nearby buildings.

*Gault,* 615 F.Supp. at 946.

The deficiency we find in this reasoning is that it fails to recognize, as the Texas Court of Criminal Appeals recognized in *Sherman,* that the prevention of violence is also a valid state interest, that in combination with the state interest in maintaining free passageway in public areas, justifies some First Amendment infringement.

■ Finally, the Texas Legislature acknowledged the volatile element potentially present in communication through picketing by restrictively and similarly defining the terms "picket" and "picketing."

The narrow definition of "picketing" limits the "sweep" of art. 5154d, sec. 1(1) to persons whose conduct, though labelled "picketing," is described in federal courts in a labor dispute context as "patrolling." *See National Labor Relations Board v. Retail Store Employees Union, Local 1001,* 447 U.S. 607, 620, 100 S.Ct. 2372, 2380, 65 L.Ed.2d 377 (1980), where Justice Stevens cited the concurring opinion of Justice Douglas in *Bakery Drivers v. Wohl,* 315 U.S. 769, 776–777, 62 S.Ct. 816, 819–820, 86 L.Ed. 1178 (1942):

> Picketing by an organized group is more than free speech, since it involves *patrol* of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive legislation. (Emphasis added.)

Thus, in assessing the constitutionality of sec. 1(1), the statute should be read as a whole, and the terms "picket" and "picketing" should be construed in accordance with their limiting definitions and not overbroadly. As narrowly drawn in terms of its stated purpose, the section does not substantially impair a significant amount of constitutionally protected conduct.

Appellant's first point of error is overruled.

In their second point of error, appellants contend that art. 5154d, sec. 1(1) is unconstitutional as applied to the facts in the present case. We disagree.

Each appellant was charged by information that alleged that he did unlawfully, intentionally, and knowingly engage in mass picketing, to-wit: acting in concert with other persons, namely, two named co-defendants, they did approach within 50 feet of an entrance to the premises being picketed, Auto Convoy Co. Each of the

appellants signed stipulations of evidence that tracked the information.

■ Generally, a stipulation that tracks the indictment or information is sufficient to support a conviction. *Smith v. State,* 635 S.W.2d 131 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

■ We do not find that the evidence, as contained in the stipulations, constitutes an unconstitutional application of the statute. Accordingly, we find that the stipulations, standing alone, support the trial court's judgment. Each appellant's second point of error is overruled.

The judgments are affirmed.

LEVY, J., dissents.

LEVY, Justice, dissenting.

Whether the "mass picketing" statute, Tex.Rev.Civ.Stat.Ann. art. 5154d, sec. 1(1) (Vernon 1971), can be constitutionally validated as a reasonable time, place, and manner regulation of First Amendment rights is the significant question before us. Considerations of relative proximity of picketing to non-expressive conduct that the State can clearly control or prevent are of primary importance in such free expression problems. Indeed, the United States Supreme Court held in *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949), that this form of expression can be regulated or prohibited only to the extent that it forms an essential part of a course of conduct that the State can regulate or prohibit. The First Amendment makes it essential that any restrictive legislation, and any court decree based thereon, at least be *narrowly* drawn to prescribe a specific evil in order to be immune from unconstitutional "overbreadth."

That picketing has aspects that make it more than speech, or that the State has significant interests in preventing violence and in prohibiting obstruction of traffic, cannot be disputed. *See Sherman v. State,* 626 S.W.2d 520, 525 (Tex.Crim.App. 1981). But such interests must be evaluated in the light and spirit of *Thornhill v. Alabama,* 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940), which defined the nature of the problem when it admonished that "the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution." Our adjudication of the validity of article 5154d, sec. 1(1), to determine whether it is rationally related to those state interests, must also be made in the light of the Supreme Court's holding in *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U.S. 485, 499–500, 74 S.Ct. 161, 171, 98 L.Ed. 228 (1953):

> For the policy of the national Labor Management Relations Act is not to condemn all picketing but only that ascertained by its prescribed processes to fall within its prohibitions. Otherwise, *it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing.* For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits. (Emphasis added).

An analysis of the relevant portion of the statute will reveal both that it is necessary to decide a federal constitutional issue within the framework of construing state law, and why I think that our state statute offends the federal constitution by prohibitions that sweep so broadly as to invade the area of protected communication.

Article 5154d provides in relevant part:

> Section 1. It shall be unlawful for any person, singly or in concert with others, to engage in picketing or any form of picketing activity that shall constitute mass picketing as herein defined.

> "Mass picketing," as that term is used herein, shall mean any form of picketing in which:

> 1. There are more than two (2) pickets at any time within either fifty (50) feet of any entrance to the premises being picketed, or within fifty (50) feet of any other picket or pickets.

> 2. Pickets constitute or form any character of obstacle to the free ingress to and egress from any entrance to any

premises being picketed or to any other premises, either by obstructing said free ingress or egress by their persons or by the placing of vehicles or other physical obstructions.

Appellants argue that the numbers-distance formula is unconstitutional, both on its face and as applied to them, because the number is arbitrary[1] and unrelated to the dangers of obstruction, coercion, or violence. They contend that the formula does not require more than a perfunctory violation of the 50-foot rule for criminal sanctions to be invoked, nor does it restrict its application to "critical" locations, viz., courthouses, schools, public buildings, and foreign consulates. I agree, and therefore dissent to the majority's holding that the statute's limitation on First Amendment freedoms "is no greater than necessary."

Specifically, article 5154d does not merely ban "en masse" picketing; it prohibits even three people from standing near *any* entrance to a premises being picketed, no matter how large the entrance. It applies to any premises and any type of picketing—not only labor disputes—without reference to the actual or potential danger of violence, *if any*, nor does it even require that persons physically obstruct, *or intend or attempt to obstruct*, traffic into or out of a building. Peaceful picketers could be arrested under this statute merely by standing closer than 50 feet to each other, without the slightest blocking of the passageway and without threatening any degree of coercion or violence.

Here, there was no *actual* "en masse" picketing, no obstruction, no attempt to obstruct, no rioting, no violence, no disruption, no disorder, no fisticuffs, no coercion —indeed, nothing but communication. The stipulations introduced in evidence assert only that the appellants approached within 50 feet of the entrance to the premises being picketed; there was no evidence that the appellants were other than peaceful or that they blocked passageway to the premises picketed. Application of the criminal

sanctions of article 5154d, sec. 1(1), to the appellants under these circumstances, therefore, unconstitutionally abridged their First Amendment rights because there was no evidence that the appellants committed, or attempted to commit, any acts, coercive or otherwise, *that the statute was intended to prohibit.* The statute is thus also inherently void for overbreadth.

State cases cited by the majority—*Geissler v. Coussoulis,* 424 S.W.2d 709 (Tex. Civ.App.—San Antonio 1967, writ ref'd n.r. e.), and *Sabine Area Building Trades Council, AFL–CIO v. Temple Associates, Inc.,* 468 S.W.2d 501 (Tex.Civ.App.—Beaumont 1971, no writ)—generally upheld the numbers—distance formula *as applied to the facts* in those cases. But neither court felt constrained, or attempted, to more narrowly construe article 5154d, sec. 1(1), to avoid entanglement with First Amendment guarantees of free communication.

The words of Mr. Justice Frank Murphy are particularly pertinent here:

The State urges that the purpose of the challenged statute is the protection of the community from the violence and breaches of the peace, which, it asserts, are the concomitants of picketing. The power and the duty of the State to take adequate steps to preserve the peace and to protect the privacy, the lives, and the property of its residents cannot be doubted. But no clear and present danger of destruction of life or property, or invasion of the right of privacy, or breach of the peace can be thought to be inherent in the activities of every person who approaches the premises of an employer and publicizes the facts of a labor dispute involving the latter. We are not now concerned with picketing en masse or otherwise conducted which might occasion such imminent and aggravated danger to these interests as to justify a statute narrowly drawn to cover the precise situation giving rise to the danger ... Section 3448 in question here does not aim specifically at serious encroach-

---

1. "A mathematical straightjacket which does not permit law officers or courts to take into account the factual context of a particular picket

line" is how the federal district court described the numbers-distance formula in *Medrano v. Allee,* 347 F.Supp. 605, 624 (S.D.Tex.1972).

ments on these interests and does not evidence any such care in balancing these interests against the interest of the community and that of the individual in freedom of discussion on matters of public concern.

... The danger of breach of the peace or serious invasion of rights of property or privacy at the scene of a labor dispute is not sufficiently imminent in all cases to warrant the legislature in determining that such place is not appropriate for the range of activities outlawed by Section 3448.

*Thornhill v. Alabama,* 310 U.S. at 105–06, 60 S.Ct. at 745–46.

Similarities between the *Thornhill* situation and the one before us are quite striking:

a) there is here no "clear and present danger" to life or property or privacy, either under the facts of this case or inherent in picketing, sufficient to justify curtailment of First Amendment rights of free communication;

b) we are not here concerned with picketing "en masse" or otherwise conducted so as to generate danger to property interests or to the public's right of access, and therefore claims of a state interest in protecting the community are not credible;

c) this statute, as was "Section 3448," is not "narrowly drawn to cover the precise situation giving rise to the danger." Only by requiring such precise enactments "can courts produce a reasonable reconciliation of the minority's right to protest and the majority's right to peace and order." *Cameron v. Johnson,* 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968);

d) article 5154d does not aim *specifically* at serious encroachments on those interests (in property and in prohibiting violence and obstruction of traffic) and does not evidence any such care in balancing those interests, in the light of the surrounding circumstances and probable consequences, against the interest of the community and that of the picketing individual in freedom of discussion and effective communication on matters of public concern;

(e) there is no legitimate state interest demanding that there *never* be more than two persons picketing or demonstrating at any place where a public or private dispute may occur. *See Davis v. Francois,* 395 F.2d 730 (5th Cir.1968).

In summary, then, article 5154d, sec. 1(1) is not a reasonable time, place, and manner regulation because it is not narrowly drawn to the legitimate state interest in reaching unprotected activity to prohibit *specific* evils, but rather arbitrarily and unnecessarily infringes upon "the interest of the community and that of the individual in freedom of discussion on matters of public concern." *Thornhill v. Alabama,* 310 U.S. at 105, 60 S.Ct. at 746. In this conclusion, I agree with all three federal courts that have construed article 5154d, sec. 1(1) in *Nash v. Texas,* 632 F.Supp. 951 (E.D.Tex. 1986); *Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 615 F.Supp. 916 (N.D.Tex. 1985); and *Medrano v. Allee,* 347 F.Supp. 605 (S.D.Tex.1972), rev'd on other grounds, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). I do not doubt that the statute could be amended to preclude its application to constitutionally protected expression, but the Texas Legislature has not yet seen fit to make the effort. *See Nash v. Texas,* 632 F.Supp. 951 (E.D.Tex.1986). The transcendent point here is that the First Amendment needs "elbow room" or "breathing space" in which to perform effectively its historic function of providing a civilized context for reaching decisions, formulating policies, and resolving disputes. Statutes attempting to restrict the exercise of First Amendment rights necessarily are subjected to intense scrutiny, under which this perfunctory numbers-distance formula must inherently fail for overbreadth.

I would sustain both of appellants' points of error, declare article 5154d, sec. 1(1) unconstitutional on its face and as applied to the appellants, reverse the judgments of the trial court, and order dismissal of the prosecutions and entry of judgments of acquittal.