Indalecio M. OLVERA, Jerry Wayne Schmidt, James Roy Hunt, James Robert Sevier, Jr., Appellants,

v.

The STATE of Texas, Appellee.

Nos. 666–87 through 669–87.

Court of Criminal Appeals of Texas, En Banc.

Jan. 30, 1991.

Rehearing Overruled April 3, 1991.

Carl Dudensing, Catherine Greene Burnett, on appeal only, Houston, for appellants.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr. and Lorraine Parker, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for State.

OPINION ON APPELLANTS' PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Following pleas of not guilty and based upon stipulated evidence, appellants were convicted in a joint non-jury trial of the misdemeanor offense of mass picketing. Tex.Rev.Civ.Stat.Ann. art. 5154d, § 1(1) (Vernon 1971). The trial court assessed punishment in each case at three days in jail and a one hundred dollar fine. A divid-

ed panel of the First Court of Appeals affirmed appellants' convictions. *Olvera v. State,* 725 S.W.2d 400 (Tex.App.—Houston [1st Dist.] 1987).

Appellants each assert two identical grounds for review: that § 1(1) of art. 5154d is facially unconstitutional on overbreadth grounds, and that § 1(1) is unconstitutional as applied. We agree with appellants' first ground and for the reasons stated herein we reverse the decision of the Court of Appeals.[1]

The information charged appellants with the offense of mass picketing in concert with others. The information alleged in pertinent part that the appellants:

intentionally and knowingly engage[d] in mass picketing, to wit: ... acting in concert with other persons, ... did then and there approach to within fifty feet of an entrance to the premises being picketed, namely, Auto Convoy Company.

The stipulations of evidence tracked the language of the informations.

Appellants contend that art. 5154d, § 1(1) is facially overbroad and vague because "it employs an arbitrary number-distance formula and gives no reference to the surrounding circumstances."

Article 5154d, § 1(1–2), with emphasis supplied, provides:

Section 1. It shall be unlawful for *any* person, singly or in concert with others, to engage in picketing or *any* form of picketing activity that shall constitute mass picketing as herein defined.

"Mass Picketing," as that term is used herein, shall mean *any* form of picketing in which:

1. There are more than two (2) pickets at *any* time within either fifty (50) feet of *any* entrance to the premises being picketed, or within fifty (50) feet of *any* other picket or pickets.

2. Pickets constitute or form *any* character of obstacle to the free ingress to and egress from *any* entrance to *any* premises being picketed or to *any* other premises, either by obstructing said free ingress or egress by their persons or by the placing of vehicles or other physical obstructions.

The term "picket," as used in this Act, shall include *any* person stationed by or acting for and in behalf of *any* organization for the purpose of inducing, or attempting to induce, *anyone* not to enter the premises in question or to observe the premises so as to ascertain who enters or patronizes the same, or who by *any* means follows employees or patrons of the place being picketed either to or from said place so as either to observe them or attempt to persuade them to cease entering or patronizing the premises being picketed.

The term "picketing," as used in this Act, shall include the stationing or posting of one's person or of others for and in behalf of *any* organization to induce *anyone* not to enter the premises in question, or to observe the premises so as to ascertain who enters or patronizes the same, or to follow employees or patrons of the place being picketed either to or from said place so as either to observe them or attempt to persuade them to cease entering or patronizing the premises being picketed.

The Court of Appeals recognized the State's "significant and substantial interests" in the prevention of violence and obstruction of traffic to and from a picketed premises, *Olvera,* 725 S.W.2d at 404, and concluded that the statute "does not substantially impair a significant amount of constitutionally protected conduct." *Id.,* 725 S.W.2d at 405. A review of the Supreme Court's picketing cases assists in addressing the Court of Appeals' holding.

### I.

While picketing plainly involves expressive conduct within the protection of the First Amendment, *Police Dept. of City of Chicago v. Mosley,* 408 U.S. 92, 99, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972); *Thorn-*

---

1. For a brief history of the problems of overbroad enforcement of this statute by injunction, see *Dallas Gen. Driv., Local 745, et al. v. Central Bev., Inc.,* 507 S.W.2d 596 (Tex.Civ.App.—Dallas 1974).

hill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), it is not speech in its pristine form; it is speech mixed with conduct of a different nature. *Cox v. Louisiana*, 379 U.S. 559, 563, 85 S.Ct. 476, 480, 13 L.Ed.2d 487 (1965); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969).

▆▆▆ In analyzing the constitutional validity of anti-picketing statutes, the Supreme Court traditionally subjects restrictions on picketing to "careful scrutiny." *Boos v. Barry*, 485 U.S. 312, 317, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988); *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). For challenges under the First Amendment, the appropriate level of scrutiny hinges upon whether a statute distinguishes between prohibited and permitted speech on the basis of content.[2] *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988), citing *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). Where a statute is content-neutral, the State may enforce regulations of the time, place and manner of expression that are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955.[3]

The Supreme Court has consistently rejected statutes which are overbroad or vague in attempting to effectuate a legitimate state interest. For example, in the seminal case of *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), the Supreme Court rejected a Tuscaloosa County, Alabama code prohibiting picketing businesses "for the purpose of hinder-

ing, delaying, or interfering with" the businesses. Thornhill was convicted for picketing related to a labor dispute. The Court rejected the ordinance on its face, however, noting that the "sweeping proscription of freedom of discussion" embodied within the statute prohibits speech which does not threaten life or property or the right of privacy. *Id.*, 310 U.S. at 105, 60 S.Ct. at 745.

During the same Term, the Supreme Court held unconstitutional an ordinance declaring it unlawful for any person to carry or display any sign or banner or badge in the vicinity of any place of business for the purpose of inducing or attempting to induce any person to refrain from purchasing merchandise or performing services or labor. *Carlson v. California*, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104 (1940). The Court concluded that while the State has the power to preserve the peace and to protect the privacy, lives and property of its residents, the "sweeping and inexact" terms of the ordinance abridge "liberty of discussion under circumstances presenting no clear and present danger of substantive evils within the allowable area of state control." *Id.*, 310 U.S. at 112–113, 60 S.Ct. at 748–749.

In *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), the Court struck down an ordinance prohibiting three or more persons to assemble on any of the sidewalks and there conducting themselves in a manner "annoying" to persons passing by. The Court noted the vagueness problem with the statute by declaring,

The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or

**2.** The First Amendment of the United States Constitution is applicable to the states through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

**3.** For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Frisby*, 487 U.S. at 480, 108 S.Ct. at 2500. Where the State places a content-based restriction on political speech in public fora, the statute is subjected to "the most exacting scrutiny." *Boos*, 485

U.S. at 321, 108 S.Ct. at 1164 (declaring unconstitutional statute which prohibits display of signs tending to bring a foreign government into public odium or disrepute within 500 foot zone surrounding embassies). *Perry*, 460 U.S. at 46, 103 S.Ct. at 955 (distinguishing public forum and nonpublic forum); *Board of Airport Com'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (declaring unconstitutional resolution banning "all First Amendment activities" within airport's central terminal).

engaging in countless other forms of anti-social conduct. It can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. *Coates*, 402 U.S. at 614, 91 S.Ct. at 1688.

The Court then shifted its focus, noting that the First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be "annoying" to some people. *Id.*, 402 U.S. at 615, 91 S.Ct. at 1688. In accord, *Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (declaring unconstitutional Houston ordinance prohibiting speech that "in any manner" interrupted a police officer in performance of duties).

For anti-picketing statutes to survive constitutional scrutiny, the Supreme Court has consistently held that the statutes must be narrowly tailored to prevent reaching a substantial amount of constitutionally protected conduct. In *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), the Court upheld a statute which prohibited picketing near a courthouse with the intent to obstruct justice. The Court's analysis focused upon the State's legitimate interest in protecting the judicial system from pressures which picketing near a courthouse might create, and the narrowly drawn requirement of an intent to obstruct justice effectuated that interest. *Id.*, 379 U.S. at 564, 85 S.Ct. at 481.

Likewise, in *Cameron v. Johnson*, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), the Court rejected a First Amendment challenge to a statute prohibiting picketing or mass demonstrations which obstruct or unreasonably interfere with free ingress to or egress from public premises, including state property, county or municipal courthouse, city hall and jails. The Court, citing *Cox*, held that the statute survived an overbreadth challenge because it did not prohibit picketing unless it obstructs or unreasonably interferes with ingress to and egress from the enumerated public places. *Cameron*, 390 U.S. at 617, 88 S.Ct. at 1338–39.

Extending the *Cox* rationale to the school context, the Supreme Court has held that a statute which prohibits disruptive behavior (noise) on or around an elementary or secondary school which disturbs or tends to disturb order at the school is not facially overbroad. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Mr. Justice Marshall, writing for the Court, noted that "[p]eaceful picketing which does not interfere with the ordinary functioning of the school is permitted. And the ordinance gives no license to punish anyone because of what he is saying." *Id.*, 408 U.S. at 119–120, 92 S.Ct. at 2305 (footnote omitted).

The United States Supreme Court most recently addressed an overbreadth challenge to a District of Columbia code which made it unlawful, within 500 feet of a foreign embassy, either to display any sign that tends to bring the foreign government into "public odium" or "public disrepute" (display clause), or to congregate and to refuse to obey a police dispersal order (congregation clause). *Boos*, 485 U.S. at 315, 108 S.Ct. at 1161; District of Columbia Code § 22–1115. The Court initially held that the content-based display clause violated the First Amendment as insufficiently narrow to serve even a presumed compelling government interest in compliance with international law. *Id.*, 485 U.S. at 329, 108 S.Ct. at 1168. The Supreme Court then turned its attention to the congregation clause, noting that, standing alone, the congregation clause "is problematic both because it applies to *any* congregation within 500 feet of an embassy for *any* reason and because it appears to place no limits at all on the dispersal authority of the police." *Ibid.*[4]

The Supreme Court determined, however, that a lower court's narrowing construction of the statute "alleviates both of these difficulties." *Ibid.* This statutory construction permits the police dispersal

---

4. The congregation clause makes it unlawful to: congregate within 500 feet of any [embassy, legation, or consulate] and refuse to disperse after having been ordered so to do by the police. D.C.Code § 22–1115.

only of congregations that are directed at an embassy and only where the police reasonably believe that a threat to the security or peace of the embassy is present. *Finzer v. Barry,* 255 U.S.App.D.C. 19, 41, n. 17, 798 F.2d 1450, 1471, n. 17 (1986). The Court concluded:

> So narrowed, the congregation clause withstands First Amendment overbreadth scrutiny. It does not reach a substantial amount of constitutionally protected conduct; it merely regulates the place and manner of certain demonstrations. Unlike a general breach of the peace statute, see, *e.g. Cox v. Louisiana,* 379 U.S. 536 [85 S.Ct. 453, 13 L.Ed.2d 471] (1965), the congregation clause is site-specific; it applies only within 500 feet of foreign embassies. C.f. *Cox v. Louisiana,* 379 U.S. 559, 568, n. 1, [85 S.Ct. 476, 483, n. 1, 13 L.Ed.2d 487] (1965) (ordinance prohibiting certain picketing "near" a courthouse upheld; § 22–1115 cited with approval as being less vague to specification of 500 feet); *Grayned, supra,* [408 U.S.] at 112, 120–121 [92 S.Ct. at 2301, 2305–2306] (upholding ban on picketing near a school; special nature of place relevant in judging reasonableness or restraint). Moreover, the congregation clause *does not prohibit peaceful congregations;* its reach is limited to groups posing a security threat. As we have noted, "where demonstrations turn violent, they lose their protected quality as expressions under the First Amendment." *Grayned, supra,* at 116 [92 S.Ct. at 2303]. These two limitations prevent the congregation clause from reaching a substantial amount of constitutionally protected conduct and make the clause consistent with the First Amendment.

*Boos,* 485 U.S. at 312, 108 S.Ct. at 1159 [Emphasis added.].

## II.

▪ With these principles in mind, we turn to the statute involved in the case at bar. It is undisputed that art. 5154d, § 1(1) is content-neutral, for "it is without reference to the content of the regulated speech." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). We must therefore determine whether the restrictions embodied within the statute are narrowly tailored to serve a significant government interest, while leaving open sufficient alternative channels of communication. *Perry,* 460 U.S. 37, 103 S.Ct. 948.[5]

▪ Appellants initially attack art. 5154d, § 1(1) as being facially overbroad and vague because the statute employs an arbitrary numbers-distance formula without consideration of the surrounding circumstances. In addressing a facial challenge to the overbreadth and vagueness of a law, a court's first task is to ascertain whether the enactment reaches a substantial amount of constitutionally protected conduct. *Boos,* 485 U.S. at 329, 108 S.Ct. at 1168; *Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 2508 (1987); *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Criminal statutes are to be scrutinized with particular care. *Hill,* 107 S.Ct. at 2502; *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948).

Section 1(1) of art. 5154d prohibits more than two pickets to be stationed within either fifty feet of any entrance to the

---

**5.** The Court of Appeals applied the four-prong *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), requirement that where speech and non-speech elements are combined in the same conduct, the government can regulate the conduct where: 1) the regulation is within the power of the government, 2) it furthers an important governmental interest, 3) the governmental interest is unrelated to suppression of free expression, and 4) if the restriction

on freedom is no greater than is necessary. *Olvera,* 725 S.W.2d 400. While arguably consistent with language employed in the picketing cases, the Supreme Court has not utilized the *O'Brien* language in picketing cases. See, for example, *Boos,* 485 U.S. 312, 108 S.Ct. 1157; *Frisby,* 487 U.S. 474, 108 S.Ct. 2495; *Grayned,* 408 U.S. 104, 92 S.Ct. 2294; and *Shuttlesworth,* 394 U.S. 147, 89 S.Ct. 935.

premises being picketed or within fifty feet of any other picket, at any time. The Court of Appeals recognized the broad sweep of § 1(1), but concluded that the definitions of the terms "picket" and "picketing" prevent the statute from reaching a significant amount of constitutionally protected conduct. *Olvera,* 725 S.W.2d at 405.[6]

We disagree. The statutory examples of what constitutes "picket" and "picketing" embrace the very heart of freedom of expression afforded by the First Amendment. Indeed, the Supreme Court addressed the implications of free speech in the labor picketing context in *Thornhill,* 310 U.S. at 103, 60 S.Ct. at 744–45:

> Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society. The issues raised by regulations, such as are challenged here, infringing upon the right of employees effectively to inform the public of the facts of a labor dispute are part of this larger problem. We concur in the observation of Mr. Justice Brandeis, speaking for the Court in [*Senn v. Tile Layers Protective Union*] (301 U.S. [468] at 478 [57 S.Ct. 857 at 862, 81 L.Ed. 1229]): "Members of a

union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution."

Article 5154d, § 1(1) is as sweeping in its reach as the statutes rejected by the Supreme Court in *Thornhill,* 310 U.S. 88, 60 S.Ct. 736, (prohibiting picketing "for the purpose of hindering, delaying or interfering" with businesses) and *Carlson,* 310 U.S. at 111, 60 S.Ct. at 748, (prohibiting display of sign or banner or badge near business for the purpose of inducing or attempting to induce others from doing business with the establishment).[7] Unlike the statutes upheld in *Cox,* 379 U.S. at 560, 85 S.Ct. at 478, and *Cameron,* 390 U.S. 611, 88 S.Ct. 1335, where narrowly tailored restrictions required, respectively, an intent to obstruct justice and unreasonable interference with ingress to and egress from public places, art. 5154d, § 1(1) provides no such limitations to its proscriptions.[8]

While the State undoubtedly has a substantial interest in protecting the property, safety and well-being of its citizenry, § 1(1) encompasses situations wholly unrelated to violence, coercion, or conduct otherwise dangerous to the populace.[9] As such, it impermissibly reaches a substantial amount of constitutionally protected con-

6. Article 5154d, § 1(2) provides:

The term "picket," as used in this Act, shall include any person stationed by or acting for and in behalf of any organization for the purpose of inducing, or attempting to induce, anyone not to enter the premises in question or to observe the premises so as to ascertain who enters or patronizes the same, or who by any means follows employees or patrons of the place being picketed either to or from said place so as either to observe them or attempt to persuade them to cease entering or patronizing the premises being picketed.

The term "picketing," as used in this Act, shall include the stationing or posting of one's person or of others for and in behalf of any organization to induce anyone not to enter the premises in question, or to observe the premises so as to ascertain who enters or patronizes the same, or to follow employees or patrons of the place being picketed either to or from said place so as either to observe them or attempt to persuade

them to cease entering or patronizing the premises being picketed.

7. The language in art. 5154d, § 1(2), ("inducing or attempting to induce anyone not to enter the premises", see supra slip op. at 8, n. 5, almost parrots the language rejected by the Supreme Court in *Carlson,* 310 U.S. 106, 60 S.Ct. 746.

8. The Legislature's concern for preventing obstruction of passageways is expressed in Tex.Penal Code Ann. § 42.03.

9. In analyzing Section 1, subdivision 2, of art. 5154d ("Pickets constitute or form any character of obstacle to the free ingress to or the egress from any entrance to any premises being picketed or to any other premises, either by obstructing said free ingress or egress by their persons or by the placing of vehicles or other physical obstructions."), this Court has identified the significant state interest as the "prevention of violence." *Sherman v. State,* 626 S.W.2d 520, 524 (Tex.Cr.App.1981).

**552**

duct.[10] The broad language of § 1(1) sweeps within its proscription any collection of more than two picketers either within fifty feet of any entrance to picketed premises or within fifty feet of each other regardless of the peacefulness of the group, the lack of obstruction to the flow of traffic, or the level of noise, if any, generated by the picketers. As in the case at bar, the statute reaches the peaceful picketing of a business which does not interfere with the ingress to or egress from the picketed premises. Simply put, once the numbers-distance criteria is met, the application of the statute is limited solely by the discretion of local authorities.[11]

■ Nor is there a reasonable narrowing construction available to save the statute from its facial overbreadth. Where a statute is impermissibly overbroad on its face, we need not invalidate it if it is susceptible to a narrowing construction consistent with its language and apparent purpose. *Morehead v. State*, 807 S.W.2d 577, 581 (Tex.Cr. App.1991); *Dubuisson v. State*, 572 S.W.2d 694, 699 (Tex.Cr.App.1978). However, a court may not assume the legislative prerogative and rewrite a statute in order to save it if the statute is not readily subject to a narrowing construction. *Morehead*, 807 S.W.2d at 581 citing M. Nimmer, *Nimmer on Freedom of Speech* § 4.11[D] at 4–156 (1984).

In *Boos*, 485 U.S. 312, 108 S.Ct. 1157, a narrowing construction of the D.C.Code's congregation clause staved off an overbreadth attack where police dispersal was interpreted as appropriate only where: 1) congregations are directed at the embassy, and 2) the police reasonably believe that a threat to the security or peace of the embassy is present. The D.C.Code lent itself to the narrowing construction by its terms: "congregate within 500 feet of any [embassy, legation, or consulate] and refuse to disperse after having been ordered so to do by the police." D.C.Code § 22–1115.[12]

In *Morehead*, we recently applied a narrowing construction to Tex.Penal Code Ann. § 42.05, which prohibits a person with the intent to prevent or disrupt a lawful meeting, procession, or gathering, to obstruct or interfere with the meeting, procession, or gathering by physical action or verbal utterance. We noted that the broad language of § 42.05 encompasses "the full range of possible disturbances, from the most minor to the most significant," *id.*, 807 S.W.2d at 581, but concluded that § 42.05 could pass a facial overbreadth challenge by construing it to criminalize only physical acts or verbal utterances that *substantially* impair the ordinary conduct of lawful meetings and thereby curtail the exercise of others' First Amendment rights. *Ibid.*

The language of the statutes in *Boos* and *Morehead* lent themselves to narrowing constructions concerning, respectively, the degree of threat to an embassy's security and the amount of interference to a public meeting. These narrowing constructions prevent the statutes from reaching a substantial amount of constitutionally protected conduct. However, the plain and simple language of art. 5154d, § 1(1) provides no such room for a narrowing interpretation.

**10.** We are mindful of the fact that other appellate courts have held art. 5154d, § 1(1) constitutional, *Sabine Area Building Trades Council, AFL–CIO v. Temple Assoc., Inc.*, 468 S.W.2d 501 (Tex.Civ.App.—Beaumont 1971); *Geissler v. Coussoulis*, 424 S.W.2d 709 (Tex.Civ.App.—San Antonio 1967); but see, *Nash v. Texas*, 632 F.Supp. 951 (E.D.Tex.1986), (holding art. 5154d, § 1(1) unconstitutional on overbreadth grounds); *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 615 F.Supp. 916 (N.D.Tex.1985) (holding art. 5154d, § 1(1) unconstitutional on overbreadth grounds). It should be noted, however, that these cases were decided prior to the Supreme Court's disposition in *Boos*, 485 U.S. 312, 108 S.Ct. 1157.

**11.** In fact, the statute has been used to arrest two attorneys when they approached their client who was, at the time, picketing alone. See *Nash v. State of Texas*, 632 F.Supp. 951, 959 (E.D.Tex. 1986) (declaring art. 5154d, § 1(1) unconstitutional on overbreadth grounds).

**12.** Somewhat like the *Boos* police dispersal requirement, the Legislature has provided a dispersal requirement for Tex.Penal Code Ann. § 42.03 (obstructing passageway) as a defense where the obstruction involves speech. See Tex.Penal Code Ann. § 42.04.

Criminal conduct under the statute is automatic once the numbers-distance formula is met. There are no terms in art. 5154d, § 1(1) to narrow or define in such a way to prevent the statute from reaching a substantial amount of constitutionally protected conduct. An ordinance is not susceptible to a narrowing construction when its meaning is unambiguous. *Hill,* 482 U.S. 451, 107 S.Ct. 2502, *Jews for Jesus,* 482 U.S. 569, 107 S.Ct. 2568. Simply put, the plain language of art. 5154d, § 1(1) is not readily subject to a narrowing construction.

Picketing claims an historic place in American society. Indeed, the body of Supreme Court case law involving picketing stems from political issues reflecting the times, such as labor disputes, *Thornhill,* 310 U.S. 88, 60 S.Ct. 736, *Cox,* 379 U.S. at 560, 85 S.Ct. at 479, the hard fought struggle for civil rights and voting rights, *Shuttlesworth,* 394 U.S. 147, 89 S.Ct. 935; *Cameron,* 390 U.S. 611, 88 S.Ct. 1335,[13] and, more recently, abortion issues, *Frisby,* 487 U.S. 474, 108 S.Ct. 2495. A society dedicated to the preservation of freedom of expression cannot countenance the broad suppression of speech embodied in art. 5154d, § 1(1). Accordingly, we hold that art. 5154d, § 1(1) is facially overbroad in violation of the First Amendment as applied to the states by the Fourteenth Amendment.

Given our disposition of appellants' first ground for review, there is no need to address the second ground presented herein. The judgments of the Court of Appeals and the trial court are reversed, and we order the prosecutions against appellants to be dismissed.

McCORMICK, P.J., concurs in the result.

MALONEY, J., not participating.

---

**13.** For an in depth historical perspective of the civil rights and voting rights cases, see T. Branch, *Parting the Waters: America in the King Years, 1954–1963,* (1988).